In re GARDNER.

(District Court, E. D. Virginia. June 16, 1900.)

BANKRUPTCY—COMMISSIONS OF REFEREE.

The setting aside of a homestead exemption to a bankrupt from the proceeds of property sold by the trustee is not the making of a dividend, such as the referee is entitled to a commission for.

In Bankruptcy.

The following is the report of Referee GEORGE S. BERNARD:

To Hon. EDMUND WADDILL, Jr., Judge of Said Court:

The undersigned referee respectfully reports to your honor's court that from the transcript of the record of the proceedings had before him in this cause from the date of the reference up to the 13th day of November, 1899, filed with the report of the undersigned made on the 14th day of November, 1899, from the transcript of the record of the subsequent proceedings so had from said 13th day of November, 1899, to the 31st day of March, 1900, herewith filed, and from the other papers in the cause on file in the clerk's office of the court, the following, among other facts not necessary to be mentioned, will appear upon inspection thereof: The bankrupt, in Schedule B 2, filed with his petition, mentions as a part of his property certain household and kitchen furniture "in the dwelling house No. 21 Brainard street, Watertown, N. Y., lately occupied by the petitioner and now occupied by his wife, estimated at $250" in value, and "a stock of goods in storehouse No. 136 Sycamore street, Petersburg," at which last-mentioned place the bankrupt, at the date of the filing of his petition, was conducting his business, which stock of goods he estimated as of the value of $1,500. In Schedule B 5, filed with his petition, the bankrupt claims as exempt from liability for his debts under section 3630 of the Code of Virginia this stock of goods, and under section 3650 said household and kitchen furniture; the former section exempting from such liability property of the value of not exceeding $2,000, and providing the exemption commonly known as the "homestead exemption," and the latter section providing what is commonly known as the "poor debtor's exemption." In making this claim in Schedule B 5, the bankrupt (to use the language of the schedule) "requests that said property may be set aside to him to be held by him as his homestead and poor debtor's exemptions as allowed by said statutes, or that the same may be sold and the exemptions allowed him out of the proceeds, as allowed by the statute of the United States and as to the court may seem best." A receiver appointed by and under the direction of your honor's court took charge of this stock of goods, carried on the business of the bankrupt,

sold a part of the goods, and upon the appointment of a trustee turned the residue of the stock over to him, who in due course duly sold the same, and deposited in the depository of the court, the Planters' National Bank of the city of Richmond, to the credit of your honor's court in this cause, the net proceeds of the sale, as did the receiver the net cash in his hands. Of the net money which so came into the hands of the receiver and trustee, and was so deposited by them, after deducting the proper costs of carrying on said business and making said sale, and after further deducting the debts of $66.80 and $105.25 due the secured creditors, A. Rosenstock and James C. Robinson, for rent, and the debt of $33.12 due the city of Petersburg for taxes, all of which were liens on said stock of goods, which, together with said costs, were allowed and duly paid under the order of your honor's court, there remains in said depository of the court a net balance of $1,462.86. Of the other debts proved none have been paid, except one of the three proved by the Jefferson County National Bank, of Watertown, N. Y.,—that of $70.79 due by John Mahan, for which the bankrupt was liable as surety. The other, proved by this bank and the creditors Carrie and William H. Gardner, aggregating the sum of $1,818.66, will not be entitled to any dividends, if the bankrupt's claim for a homestead is allowed. All of the other unpaid debts proved, aggregating the sum of $298.91, being demands for the purchase price of goods constituting part of the stock of goods aforesaid, are, however, debts against which the claim of homestead would not be valid, and under the rulings of your honor's court would be entitled to dividends out of any money which would be payable to the bankrupt as a homestead exemption.

The question now before the referee is, what is the disposition of said fund of $1,462.86 proper to be made? The solution of this involves that of several other questions. Subdivision "a" of section 40 of the bankruptcy act, fixing the compensation of referees, which for argument's sake we will assume to be a valid provision of law, gives them "from estates which have been administered before them one per centum commissions on sums to be paid as dividends and commissions, or one-half of one per centum on the amount to be paid on the confirmation of a composition." Subdivision "a" of section 48 of the act, fixing the compensation of trustees, gives them "from the estates which they have administered such commissions on sums to be paid as dividends and commissions as may be allowed by the courts, not to exceed three per centum on the first five thousand dollars or less, two per centum on the second five thousand dollars or part thereof, and one per centum on such sums in excess of ten thousand dollars." What are dividends within the meaning of these sections? Sums of money payable to creditors alone? Or all sums payable by the trustee, including payments of debts having priority, the several classes of which are set out in detail in section 64 of the act? Under the rule of construction embodied in the maxim, "Expressio unius est exclusio alterius," the words of these sections giving to referees and trustees commissions "upon dividends and commissions," commissions being an item of the costs of administration, it seems clear that commissions are not allowable upon any other item of such costs. But does the word "commission," as used in section 40a after the word "and," embrace trustees' as well as referees' commissions, and does the same word, as used in section 48a next after the word "and," embrace referees' as well as trustees' commissions? In view of the very small commissions allowed to either trustee or referee, this question might almost be classed as one "de minimis." Yet it confronts us as one not to be thus disposed of, and should be passed upon. It is to the interest of the referee to decide that the word "commissions," as used in sections 40a and 48a next after the word "and," embraces the commissions of both referee and trustee. The claim of Mr. Richard B. Davis for $100 as an attorney's fee is for an item of the costs of administration, and is allowable under the clause of section 64b which provides that "the costs of administration" shall include "one reasonable attorney's fee, for services actually rendered * * * to the bankrupt in voluntary cases, as the court may allow." If the referee were to pass upon this claim, and disallow or reduce it, his action would increase the net sum distributable as dividends. It would accordingly be to his interest to disallow or reduce the claim.

Assume, for argument's sake, that the word "dividends" embraces only payments made to creditors from the fund under the control of the court in a

case like this. Does the word embrace the payment of a debt of a secured creditor, who, like the secured creditors, Rosenstock and Robinson, proved their claims in this cause and received payment under the proceedings had therein? In re Sabine, 1 Nat. Bankr. N. 312, 1 Am. Bankr. R. 322, Referee William H. Hotchkiss, of the United States district court for the Northern district of New York, while holding that referees and trustees are not entitled to commissions on any payment made to a creditor entitled to priority under section 64b of the bankruptcy act, ruled that, if a secured creditor submits his security to the bankruptcy court, and is paid therefor by the trustee out of the funds of the estate, the referee and trustee are entitled to commissions on the sums so paid. In Re Coffin, 1 Nat. Bankr. N., 507, 2 Am. Bankr. R. 344, Referee F. B. Dillard, of the United States district court for the Eastern district of Texas, ruled that referees and trustees are entitled to commissions, not only on general dividends, but also upon the proceeds of property affected by liens, if such property is administered by the bankruptcy court or comes into the hands of the trustee. In Re Gerson, 2 Am. Bankr. R. 352, Referee Joseph Mason, of the United States district court for the Eastern district of Pennsylvania, ruled as did Referees Hotchkiss and Dillard in the Sabine and Coffin Cases, supra, but apparently treated the secured creditors, who were landlords entitled to rent, as creditors entitled to priority under subdivision "b" of section 64 of the act, and not as creditors protected under section 67, relating to liens, and so entitled to payment. In Re Ft. Wayne Electric Corp., 1 Am. Bankr. R. 706, 1 Nat. Bankr. N. 301, 94 Fed. 109, the United States district court for the district of Indiana held that a payment to a secured creditor by a trustee is not a dividend within the meaning of the bankruptcy act, and that the referee is not entitled to commissions thereon. District Judge Baker, delivering the opinion of the court, said: "The 'dividend' which is claimed to have been paid in this case was really a payment pro tanto on a secured claim. Such a payment is expressly excepted from the definition of a 'dividend' as it is furnished by the bankruptcy law. The law provides that 'dividends of an equal per centum shall be declared and paid on all allowed claims except such as have priority or are secured.' Section 65a. It also provides that 'the value of securities held by secured creditors shall be determined by converting the same into money according to the terms of the agreement pursuant to which such securities were delivered to such creditors, or by such creditors and the trustee, by agreement, arbitration, compromise, or litigation, as the court may direct, and the amount of such value shall be credited upon such claims, and a dividend shall be paid only on the unpaid balance.' In other words, 'dividends,' within the meaning of the law, are not declared and paid on secured claims. A 'dividend,' within the meaning of the law, is declared and paid on unsecured claims only." In Re Barber, 1 Nat. Bankr. N., 559, 3 Am. Bankr. R. 306, 97 Fed. 547, the United States district court for the district of Minnesota held that the word "dividend," as used in sections 40a and 48a, means a parcel of the fund arising from the assets of the bankrupt's estate rightfully allotted to a creditor entitled to share in the fund, whether in the same proportion with other creditors or in a different proportion, and whether the creditor has a security or priority over other creditors or is merely a general creditor. In his opinion District Judge Lochren said: "The word 'dividend' is a business term, applied to the division among stockholders of a fund arising from profits, or to the division among creditors of an insolvent of the fund arising from the assets of the insolvent's estate. In either case it is the fund that is divided and parceled out among those who are entitled, and the part of the fund so allotted to a stockholder or creditor is his dividend. Dividends upon profits may be apportioned at one rate to the holders of preferred stock and at another rate to the holder of common stock. So, in insolvency, a creditor having priority may be paid in full, yet such payment is just as certainly his dividend or share of the fund as is the small percentage on his claim which the general creditor may receive from the same fund; and unless there is something in the act requiring a different holding, the referee and trustee are entitled to commissions upon all such dividends. If the word 'dividend' could be construed as applying to a division of the debts, so that such commissions are to be allowed only in respect to such debts as are divided by being paid only in part, then, in a case like In re Sabine, 1 Nat. Bankr. N., 312, where, by good management of the referee and trustee,

every claim was paid in full, these officers would be entitled to no commissions. A dividend, in bankruptcy, is a parcel of the fund arising from the assets of the estate, rightfully allotted to a creditor entitled to share in the fund, whether in the same proportion with other creditors or in a different proportion. I think, I have indicated the general understanding of the meaning of the word 'dividend,' and I fail to discover anything in the act tending to show that it is used in any different sense. Section 64, relating to debts which have priority, strengthens my conclusion. That provides that the trustee shall pay all taxes 'in advance of the payment of dividends to creditors.' This would exclude taxes from the category of dividends, but nothing else. The payment of debts having priority are payments to creditors from the fund arising out of the assets of the amount to which they are entitled, severally,—to each his proper dividend of the fund, under the terms of the act. Debts having priority must be examined by the referee upon proofs, and allowed or disallowed like other claims." If the referee were to follow the rulings in the Sabine, Coffin, Gerson, and Barber Cases, supra, as it is to his interest to do, he would allow himself and the trustee commissions on the debts of Rosenstock and Robinson.

Let us, however, pass on to the consideration of another, and the more important, question involved in this case. Is the bankrupt entitled to the homestead exemption claimed by him? If he is, then, as hereinbefore stated, the creditors Carrie Gardner, William H. Gardner, and the Jefferson County National Bank of Watertown, representing together claims aggregating the sum of $1,818.66, will be entitled to no dividends, but the other creditors, whose claims aggregate the sum of $298.91, and against which a claim of homestead is not valid, will be entitled to dividends,—indeed, to dividends which will pay these claims in full. If, on the other hand, the bankrupt is not entitled to the homestead exemption claimed by him, all of said creditors, said Carrie and William H. Gardner and said bank included, will be entitled to dividends, and the aggregate of these dividends will be several hundred dollars larger than those payable under the first hypothesis. In this state of things it is to the interest of the referee to decide that the bankrupt is not entitled to have his claim of homestead allowed. As the bankrupt's right to the poor debtor's exemption will not be affected by any view that may be taken as to his right to the homestead exemption, the referee practically has no interest in this question. Yet in certain cases that may be supposed the right to each exemption might depend upon the decision of the same question.— a state of things which does not exist in this case. The bankrupt might be entitled to the former, and not to the latter, exemption. Interested, however, as hereinbefore set forth, if subdivision "a" of section 40 of the bankruptcy act be, as assumed, a valid provision of law, the referee of course should decide no one of the several questions aforesaid, and he accordingly, without expressing any opinion upon any of them, reports them to your honor for decision, but in so doing deems it proper to express the opinion that said section of the statute, to the extent that it makes the referee's compensation, thereby prescribed, dependent upon his rulings on certain questions, is not valid, but unconstitutional and void. It is believed that the statute books of no country where our system of jurisprudence prevails furnish a precedent of a law creating an office, the incumbent of which must discharge judicial functions, however limited, and providing a plan of compensation for his services in discharging such functions which would give him compensation greater or less according to his decisions in certain cases coming before him.

That a referee in bankruptcy is an officer charged with judicial functions is not an open question. In Coll. Bankr. p. 241, the author says: "Although the duties of referees largely pertain to routine matters, and although every act of his is subject to review by the judge, his duties are judicial as well as administrative." Mr. Brandenburg in his work (Branden. Bankr. p. 220) says: "The referee under this act occupies an office corresponding to that of register under the act of 1867. To a limited extent he exercises judicial functions, and is essentially an assistant to the judge in the district for which appointed. He must take the oath prescribed for judges of the United States courts in section 712, Rev. St. U. S." The debates in both houses of congress, pending the consideration of the several bankruptcy bills from which was evolved the

bill finally agreed upon and passed, show that the referee was regarded as a judicial officer. Mr. Parker, of New Jersey, in the debate in the house of representatives on the 17th of February, 1898, said: "I am not quite satisfied that the referee should be forbidden to hold any office except that of notary public or master in chancery. The place is really not that of an officer, but of a person schooled in the law, to whom the case is referred for adjudication. There is no reason, in my judgment, why the judges of various state courts may not take such references. Such a judge might be the very person, because of his acquaintance with courts of insolvency, who could administer the insolvency business of a county under this act with the greatest speed and in the best manner." 31 Cong. Rec. p. 2078, c. 3. Senator Nelson, of Minnesota, the patron of the "Nelson Bill," in the senate, on the 27th day of June, 1898, spoke of the referee as "being practically a judge in chambers, attending to all interlocutory and default business." Id. p. 6298, c. 7. In Re Northrop, 1 Am. Bankr. R. 427, decided in August, 1898, Referee William H. Hotchkiss, of the Northern district of New York, granted an injunction staying a sale about to be made by a sheriff under a judgment of a state court, and by cogent reasoning sustained a referee's authority to do this judicial act. This ruling was followed by the same referee in Re Sabine, 1 Am. Bankr. R. 315, 1 Nat. Bankr. N. 45, decided in the same month, and by Referee Roswell R. Moss, of the Northern district of New York, in September, 1898, in Re Adams, 1 Am. Bankr. R. 94, 1 Nat. Bankr. N. 167. In the Sabine Case a sale of real estate about to be made under the judgment of a state court in a foreclosure proceeding was enjoined, and in the Adams Case the injunction was awarded to stay proceedings against the bankrupt in a state court. It is proper to note that these rulings were made before the supreme court of the United States promulgated its general orders regulating proceedings in bankruptcy, in one of which it was deemed necessary to expressly provide that applications "for injunctions to stay proceedings of a court or officer of the United States, or of a state, shall be heard and decided by a judge"; this language leaving the referee with power to hear and decide applications for injunctions not within the classes specially mentioned in the order. In Re Styer, 2 Nat. Bankr. N. 205, 3 Am. Bankr. R. 424, 98 Fed. 290, the United States district court for the Eastern district of Pennsylvania held that a referee, being a court under the provisions of the bankruptcy act, has power and authority to order the sale of the bankrupt's property and appoint appraisers therefor, except when the property is in the hands of a receiver before adjudication, when the district court only can make the order, but that the referee's order is subject to approval, and should not be made unless the referee is satisfied that the interest of the creditors will be advanced by so doing. McPherson, District Judge, delivering the opinion of the court in this case, said: "A question of practice was raised upon the argument of these exceptions which it may be desirable to settle, namely, whether a referee has authority to order a sale of the bankrupt's property. Clause 7 of the first section of the act provides that the word 'court' shall mean 'the court of bankruptcy in which the proceedings are pending, and may include the referee.' General order No. 18 (32 C. C. A. xx., 89 Fed. viii.), and forms 42, 44, 45, and 46 (32 C. C. A. lxxiii.–lxxv., 89 Fed. xlix.–li) show a construction of the clause by the supreme court in favor of the referee's authority upon the point in controversy. But any order made by the referee is subject to revision by the district court. Similar remarks may be made concerning the referee's authority to appoint appraisers. See form 13 (32 C. C. A. lviii., 89 Fed. xxxiv.). When the property is in the hands of a receiver before adjudication, the district court is, of course, the only tribunal that can appoint the appraisers or order a sale. The referee, therefore, had authority to make the order now under consideration, but I find myself obliged to disagree with his conclusion that the sale should be so ordered. Without deciding the question whether this court has power to sell a bankrupt's real estate discharged of liens, and assuming for present purposes that such power exists, it is clear the sale should not be ordered, unless the court is satisfied that the interest of the general creditors would not be injuriously affected. In the present case, I am not satisfied upon this point." The general order of the supreme court defining the duties of referees (No. 12 [32 C. C. A. xvi., 89 Fed. vii.]),

read in connection with the several forms (42, 43, 45, and 46 [32 C. C. A. lxxiii.–lxxv., 89 Fed. xlix.–li.]) mentioned in the foregoing extract from the opinion of Judge McPherson, leaves no room to doubt what, in the opinion of the supreme court, are the powers and duties of a referee. This general order is as follows: "(1) The order referring a case to a referee shall name a day upon which the bankrupt shall attend before the referee; and from that day the bankrupt shall be subject to the orders of the court in all matters relating to his bankruptcy, and may receive from the referee a protection against arrest, to continue until the final adjudication on his application for a discharge, unless suspended or vacated by order of the court. A copy of the order shall forthwith be sent by mail to the referee, or be delivered to him personally by the clerk or other officer of the court. And thereafter all the proceedings, except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee. (2) The time when and the place where the referees shall act upon the matters arising under the several cases referred to them shall be fixed by special order of the judge, or by the referee; and at such times and places the referees may perform the duties which they are empowered by the act to perform. (3) Application for a discharge, or for the approval of a composition, or for an injunction to stay proceedings of a court or officer of the United States, or of a state, shall be heard and decided by the judge. But he may refer such an application, or any specified issue arising thereon, to the referee to ascertain and report the facts."

Having the judicial powers, and charged with the duty of exercising these powers in certain cases, he is subject to the same disabilities to which any other officer of like character under like circumstances would be subject. Let us now examine the authorities applicable in such cases. "It is a fundamental rule in the administration of justice that a person cannot be judge in a cause wherein he is interested," says Broom in the chapter of Broom's Legal Maxims discussing the maxim, "Nemo debet esse judex in propria sua causa." Citing several authorities, among them Broom, Leg. Max., Bell, C. J., delivering the opinion of the court in Moses v. Julian, 45 N. H. 52, 84 Am. Dec. 114, says: "'No man ought to be judge in his own cause,' is a maxim aimed at the most dangerous source of partiality in a judge." In this case, an appeal from the decree of a probate court, the probate judge had been attorney for the decedent, and as such advised him in relation to, and wrote, the will offered for probate, and subsequently in his official character as probate judge admitted it to probate. This was a ground of objection to the decree complained of, and the appellate court sustained it. "It is a maxim in every code, in every country, that no man should be judge in his own cause," says Chancellor Sandford in Insurance Co. v. Price, Hopk. Ch. 1. "The learned wisdom of enlightened nations and unlettered ideas of ruder societies are in full accordance upon this point; and, whenever tribunals of justice have existed, all men have agreed that a judge shall never have power where he himself is a party." In this case the chancellor was a stockholder in the plaintiff corporation, and upon the calling of the case, so informing the counsel for the parties, stated that, according to the opinion he then entertained, he could not hear the cause, but desired that the question whether he ought to act as judge in the cause or not should be argued. The counsel declined to argue the question, and the chancellor gave the opinion from which the foregoing extract is taken, holding that, being a stockholder in the plaintiff corporation, he was, in substance, a party to the suit, and accordingly could not act as judge. Judge Cooley in chapter 7 of Cooley's Constitutional Limitations (5th Ed., side p. 175), having remarked that the assumption of judicial power by the legislature in a certain case is unconstitutional, because, though not expressly forbidden, it is nevertheless inconsistent with the provisions which have conferred upon another department the power the legislature is seeking to exercise, says: "And for similar reasons a legislative act which should undertake to make a judge the arbiter in his own controversies would be void, because, though in form a provision for the exercise of judicial power, in substance it would be the creation of an arbitrary and irresponsible authority, neither legislative, executive, nor judicial, and wholly unknown to constitutional government." In chapter 11 of the same work (side page 410) Judge Cooley says: "There

is also a maxim of law regarding judicial action which may have an important bearing upon the constitutional validity of judgments in some cases: 'No one ought to be a judge in his own cause.' And so inflexible and so manifestly just is this rule that Lord Coke has laid it down that 'even an act of parliament made against natural equity, as to make a man a judge in his own case, is void in itself; for "jura naturæ sunt immutabilia," and they are "leges legum." ' " In a note to this paragraph the learned author says: "We should not venture to predict, however, that even in a case of this kind, if one could be imagined to exist, the courts would declare the act of parliament void. They would never find such an intent in the statute, if any other could possibly be made consistent with the words." In the next paragraph of his text the author says: "This maxim [that no one ought to be judge in his own cause] applies in all cases where judicial functions are to be exercised, and excludes all who are interested, however remotely, from taking part in their exercise." In a subsequent paragraph, having said that "it is very common, in certain classes of cases, for the law to provide that certain township and county offices shall audit their own accounts for services rendered the public, but in such cases there is no adversary party, unless the state, which passes the law, or the municipalities, which are its component parts and subject to its control, can be regarded as such," Judge Cooley says: "But, except in cases resting upon such reasons, we do not see how the legislature can have any power to abolish a maxim which is among the fundamentals of judicial authority. The people of a state, when framing their constitution, may possibly establish so great an anomaly, if they see fit; but if the legislature is intrusted with apportioning and providing for the exercise of the judicial power, we cannot understand it to be authorized, in the execution of this trust, to do that which has never been recognized as being within the province of the judicial authority."

Let us apply these sound principles expounded by this eminent text-writer and jurist. In Virginia we have an officer, known as a "commissioner in chancery," whose duties, to use the language of Moncure, J., delivering the opinion of the court in Kraker v. Shields, 20 Grat. 377, "are considered to be, generally, the same with those of a master in chancery in England, whose duties are set forth in the books of chancery practice of that country, as, for instance, in 2 Daniell, Ch. Prac. pp. 1345–1503, § 7." Referring to the commissioner in chancery, Staples, J., delivering the opinion of the court in Bowers' Adm'r v. Bowers, 29 Grat. 697, said: "His duties are of a grave and responsible nature. He is assistant to the chancellor. There is no question of law or equity, or of disputed fact, which he may not have to decide, or respecting which he may not be called upon to report his opinion to the court." As far as the limited powers of a referee in bankruptcy extend, he occupies, as we have seen, a position similar in many particulars to that of a commissioner in chancery. Like him, the referee is charged with the duty of deciding questions of law and equity, and questions of disputed fact. Suppose the legislature of Virginia were to enact a law fixing the compensation of a commissioner in chancery, whereby the officer would be given a commission upon the dividends distributed in cases referred to him under an order of court. Would any tribunal hesitate to declare such legislation violative of the fundamental principle that no one should be judge in his own cause, and therefore unconstitutional and void? That the courts would so hold cannot be doubted. If, then, a state legislature, possessing all powers not withheld by some provision of the constitution of the state or of the United States, cannot adopt such legislation, a fortiori congress, a legislative body of limited powers, possessing none not conferred upon it by the constitution of the United States, cannot pass a law of like character. Neither section 1 of article 3, which gives congress the power to establish a supreme court, and from time to time inferior courts, in which the judicial power of the United States shall be vested, nor the provision of section 8 of article 1, which gives it power to establish "uniform laws on the subject of bankruptcies throughout the United States," gives congress authority to vest in any officer having judicial functions power to decide any question wherein he has a pecuniary interest. No such extraordinary legislation could have been contemplated by the framers of the federal constitution. If congress is without power to pass such a law, it follows that the provisions of section 40a, giving referees commissions on

sums to be paid on dividends and commissions, is unconstitutional and inoperative in every case wherein a referee is called upon to decide a question, and the result of his decision will increase or diminish his compensation. Accordingly, in view of the provision of general order 12 (32 C. C. A. xvi., 89 Fed. vii.), adopted by the supreme court, directing that, after the reference of a case as thereby provided. "all the proceedings, except such as are required by the act or by these general orders to be had before the judge, shall be had before the referee," and, further, in view of the provision of section 39b that "referees shall not act in cases in which they are directly or indirectly interested," unless said provision of section 40a be regarded and treated, for the reasons aforesaid, as of no effect, referees, as in the case now under consideration, will be disqualified by interest from acting in the great majority of the cases which will come before them, and the judges of the district courts will have their hands full in deciding matters of controversy which it was the manifest intent of the framers of the statute to have decided and disposed of by referees, "subject. always, to a review by the judge," as provided by section 38a of the act defining the jurisdiction of referees. The well-understood intent of the framers of the act in providing by section 34 that the districts of referees should be designated, and from time to time changed, "so that each county, where the services of a referee are needed, may constitute at least one district," was that the administration of the law should be brought home to the people by the establishment of a local bankruptcy court in each county, if necessary, and the delay and expense incident to going before the district judge, to have him decide originally, and not by way of review, the questions that may arise in the proceedings of a case, that with more convenience to all parties concerned may be decided by a referee, might thereby be avoided. See opinion of Referee Hotchkiss in Re Northrop, supra, and that of Referee James M. Olmstead, of the district of Massachusetts, in Re Murphy, 3 Am. Bankr. R. 499. This object of the statute will be defeated, if section 40a is not to be treated as void to the extent hereinbefore suggested, and referees are accordingly, as in the case under consideration, to be disqualified from acting by reason of interest. If, however, the section be treated as not in harmony with, but repugnant to, the general purpose of the bankruptcy act, and inapplicable to any case wherein a question may arise before a referee the decision whereof may affect the quantum of dividends payable in the case, a serious difficulty is removed, and the decision of all such questions will not devolve upon the district judge.

Taking this view of the case under consideration, the referee has, of course, prepared no statement embodying any plan for the distribution of the fund under the control of the court, but will do this, and (as required by section 39a of the act) will prepare and deliver the proper dividend sheets as soon as your honor shall have decided the questions aforesaid, and given him instructions in the premises. In giving such instructions, if your honor be of opinion that the view taken by the referee of section 40a aforesaid is correct, and that for his services in this case, as disclosed by the record, he is entitled to some compensation beyond the fee of $10 prescribed by said section, your honor is requested to allow a reasonable sum as such compensation, to be paid to the referee out of said fund as a part of the costs of administration.

The evidence taken before the referee and the proof of the claim of Mr. Richard B. Davis for an attorney's fee are transmitted to the clerk, along with this report, to be filed with the other papers in the case on file in his office.

Richard B. Davis, for petitioner.

Wm. B. McIlwaine, Hamilton & Mann, and Williams T. Davis, for creditors.

WADDILL, District Judge. Upon considering the questions raised by the referee's report filed herein on the 2d of May, 1900, I determine and decide as follows:

1. The claim of the bankrupt to his homestead is allowed, after deducting the costs of the case and such debts as the homestead exemption is not a bar against.

103 F.—59

2. The fund should be distributed, upon a scheme and statement made for the purpose by the referee, as follows: (a) To costs remaining due, including an allowance to the referee, independent of his filing fee, for taking evidence and making report upon the claim for a homestead, of $60, and to the trustee a commission of 3 per centum upon net proceeds of the sale of the property; the same, with the consent of the homestead claimant, having been converted into money and placed to the credit of the court, together with the attorney's fee of counsel for the bankrupt as proved. (b) To the payment of debts proved, against which the homestead cannot be claimed. (c) The residue remaining in hand to be paid to the bankrupt on account of his homestead claim.

3. The determination of the court to allow the homestead exemption makes it unnecessary to pass upon the interesting constitutional question so ably presented in the referee's report. The setting aside of the homestead exemption is not the making of a dividend, such as the referee is entitled to a commission for.