## ELIZABETH WOOLENSLAGLE v. ELI G. RUNALS.

*Exchange of lands—Fraudulent representations—Measure of damages—Evidence—Deposition.*

1. In a suit to recover the damages sustained by the plaintiff in conveying land *owned* by her to the defendant in exchange for his deed of land, to which he had *no title*, she being induced so to do by his representations of *ownership*, the measure of damages is the *actual* value of the land conveyed to the defendant.

2. Where the *undisputed* evidence in a suit brought to recover damages sustained on an exchange of lands shows that the defendant approached the plaintiff on the subject of such exchange, and represented that he was the *owner* of the lands he proposed to convey, and in possession of the same through a tenant, and that they were of a specified value, all of which representations were *fa'se* and *fraudulent*, but were relied upon by the plaintiff, and induced her to convey her land to the defendant, and surrender to him the possession of the same, the *form* of his conveyance to her is immaterial.

3. In *such* a case the claim of the defendant that he stated to the plaintiff before the trade that he had never seen the land he proposed to convey, and tried to induce plaintiff to go and examine it and investigate as to its *value* and defendant's *title*, is properly submitted to the jury under the testimony, to be considered in determining the question whether plaintiff was *deceived* and *defrauded*, as is his further claim that his deed, the covenants in which were limited to his own acts, was read over to the plaintiff and accepted by her.

<hr />

[1] *Wheeler v. Wilkins*, 19 Mich. 78; *Hill v. Webber*, 50 Id. 142.
76 MICH.—35.

4. The deposition of a witness taken in a suit in *assumpsit*, which was discontinued, and an action on the case brought to recover the *same* damages,—the parties being identical,—may be read in evidence on the trial of the *second* suit, under How. Stat. § 7472.[1]

Error to St. Joseph. (Loveridge, J.) Argued June 11, 1889. Decided October 18, 1889.

Action on the case. Defendant brings error. Affirmed. The facts, and points of counsel passed upon by the Court, are stated in the opinion.

*A. M. Graham* and *H. P. Stewart*, for appellant.

*T. C. Carpenter* and *Alfred Akey*, for plaintiff.

Long, J. The declaration in this case alleges, substantially, that on March 18, 1886, the plaintiff was the owner in fee of 20 acres of land off the north side of the south half of the north-east quarter of section 3, and the north-west quarter of the north-east quarter of section 12, all in the township of Burr Oak, St. Joseph county, Michigan; that the first-mentioned parcel is of the value of $600, and the other $500; that the defendant then and there falsely and fraudulently represented and pretended to the plaintiff that he was then and there the owner in fee simple, clear and free from all incumbrance, of the west half of the south-west quarter of section 5, township 8 north, range 5 west, White county, state of Arkansas; that he was then in possession of the land by a tenant, and receiving a portion of the crops then growing.

---

[1] How. Stat. § 7472, provides that when the plaintiff in any suit shall discontinue it or become nonsuited, and another suit shall be commenced for the same *cause*, between the same parties or their respective representatives, or when any suit shall be appealed, all depositions lawfully taken for the first suit, or the suit below, may be used on the second, or on the appeal, in the same manner, and subject to the same conditions and objections, as if originally taken for the second suit or on the appeal: *Provided*, the deposition shall have been duly *filed* in the court where the first suit is pending, or in the court below.

That said defendant, on the day aforesaid, applied to the plaintiff, and offered to deed to her the said lands and premises in White county, Arkansas, in exchange for her said lands in Burr Oak, at and for the price of $1,100, at a consideration for his lands, to wit, of $1,600, said plaintiff to give him back a mortgage of $500 on the said Arkansas lands as an additional consideration over and above her said lands in Burr Oak; and then and there falsely and fraudulently represented that his said lands in Arkansas were then worth $1,600, improved and under a good state of cultivation, and clear and free from incumbrance.

Plaintiff further says that, believing said false and fraudulent representations and pretenses, and relying upon the same, and in relation to his said lands, and in consideration thereof, she did then and there make, execute, and deliver to said defendant a warranty deed of said lands in Burr Oak, and thereby then and there conveyed to him in fee-simple the title to her said lands in Burr Oak; and the said defendant then and there falsely and fraudulently pretended to convey to her by warranty deed the title to his said lands in Arkansas, clear and free from all incumbrances; and said plaintiff then and there received from said defendant said pretended deed, believing it to be a warranty deed of the same, and that his title to the same was as he had so falsely represented the same to be; and plaintiff then gave him back a mortgage on the same of $500 as a part of the purchase price of said lands.

Plaintiff further says that in truth and in fact said defendant was not the owner of said lands in Arkansas, and was not then in possession of the same by tenant or otherwise, nor receiving part of the proceeds of said lands; and said lands were not an improved farm, nor under a good state of cultivation; and his said pretended deed was not a warranty deed of said lands and premises, but only a special warranty, and against his own acts. But the plaintiff was induced to

believe, from the declarations and statements of the defend-
ant, that the said deed contained a covenant of warranty
against everybody, and, relying thereon, accepted said deed
as aforesaid.

Plaintiff further says that said lands were not free and clear
from incumbrances, and said defendant had no right to sell
and convey the same; that at the time of said pretended
sale said lands were the property of the United States, sub-
ject to a homestead entry, and were entered by one James
Crawford, then in possession; whereby, and by means
whereof, said plaintiff has been cheated and defrauded out of
her said lands above described in Burr Oak by said defendant,
and has received no consideration therefor; and said defend-
ant has sold and disposed of said lands in Burr Oak, or a
portion thereof, and converted the proceeds to his own use;
all to the great damage of plaintiff, etc.

The cause came on for trial in the circuit court for the
county of St. Joseph before a jury, and the plaintiff had ver-
dict and judgment for the sum of $1,261.91.

Defendant brings the case to this Court by writ of error.

At the commencement of the trial, and after the jury had
been impaneled, plaintiff's counsel made his opening state-
ment to the jury, in which he claimed as a measure of recov-
ery that he would prove the value of the lands first herein
described as the lands exchanged by plaintiff to defendant,
and should ask judgment for the value of these lands.

Defendant's counsel then insisted that plaintiff's counsel
should not be permitted to go on with his case under his
opening, for the reason that under the declaration the plaint-
iff could not recover for the value of the lands she had traded
to defendant, but must rely upon and recover, if at all, for
the value of the lands in Arkansas which she had traded for,
or the difference of the value of the lands traded by defend-
ant to her as they actually were, and what they would have
been if they had been as represented; that the declaration

was in trespass on the case, alleging fraud and deceit, without any allegation pointing towards a rescission of contract.

The court overruled this objection, and permitted the plaintiff to proceed with her case.

On the trial the plaintiff's evidence tended to show that she was the owner in fee of the lands first described in the declaration in Burr Oak, St. Joseph county, and that the two pieces together were worth what they were called in the exchange, $1,100.

That defendant first approached plaintiff's husband on the subject of the exchange, and stated to him that he had 80 acres of land in White county, Arkansas, described as the west half of the south-west quarter of section 5, township 8 north, range 5 west; that it was a nice, smooth 80, level, and clear of stones; that it was all cleared but 20 acres, was in crops, and under cultivation, all but 20 acres, and worth $1,600. Plaintiff's husband then told defendant that the lands for which he wished to exchange those Arkansas lands belonged to his wife, and a few days thereafter defendant called to see plaintiff about the exchange, when the husband said to him,—

"I think you hold the lands too high for a new country;"—

When the defendant took a letter from his pocket purporting to have been written by a Mr. Hughes, and read from it that Mr. Hughes said that the land was, as he thought, well worth $20 an acre; and defendant said that he had a tenant on the land working it on shares, and one-third of the crop was coming to him; and that plaintiff, if the exchange was made, could have his one-third. Defendant also took a photograph from his pocket, and exhibited it to plaintiff and her husband, and stated that, while it was not a picture of the house upon the land, yet it resembled the house there, though the house was not quite so good a one as shown in the picture.

Defendant also spoke to them about the climate there, the short winters, and that it was not necessary to cut hay for cattle, as they turned them out into the bottoms during the winter, where they did well; that the land was situated near a high school, where plaintiff's daughters could find employment at good wages. Defendant, in this talk, agreed to give a good deed, free and clear of all incumbrances; and plaintiff claims that, relying upon the representations so made by defendant, she was induced to change her lands for these lands of defendant.

The parties thereupon went to an attorney, had the papers prepared, plaintiff making and delivering to defendant a deed of warranty of her two pieces of land at a consideration of $1,100, and taking the deed from defendant of his Arkansas lands, giving back a mortgage thereon for $500, payable $50 each year.

Defendant took his deed, placed it upon record, and immediately thereafter took possession of the Burr Oak lands, and sold and conveyed the 40-acre piece to a third party.

Plaintiff sent her deed forward to White county, Arkansas, for record, and soon thereafter her husband went to Arkansas to see about the lands, and make repairs upon the buildings preparatory to the plaintiff and her family removing there. On reaching the land he found Mr. Thomas J. Crawford living upon it with his family, claiming to be the owner, and insisting that Mr. Runals, the defendant, had no interest in it.

Sometime later in the season, the husband of plaintiff still remaining in Arkansas, Mr. Runals, the defendant, went to Arkansas, and with plaintiff's husband visited Mr. Crawford, where he attempted to compromise with Crawford, and procure his title, and, failing in this, offered as a compromise with plaintiff to procure for her other lands in Arkansas, but refusing to redeed the Michigan lands to her. It was then ascertained by the plaintiff and her husband that the deed

which the defendant had given plaintiff of the Arkansas lands was not a full covenant warranty deed, but a deed with special covenants against defendant's own acts.

It also appears that the only title which defendant had of these Arkansas lands was a deed from J. W. Hughes, dated in February, 1886, and no attempt is made by defendant to trace title to himself in the lands.

It appears also that these lands were occupied by Mr. Thomas J. Crawford from May 27, 1882, as his home, he having on that day entered them as a homestead from the United States government.

On the trial the claim of the plaintiff was that the defendant, for the purpose of inducing her to convey to him the 60 acres of land then owned by her in Burr Oak, fraudulently represented to her that he was the owner in fee-simple, free and clear from all incumbrance, of the lands in Arkansas; that he was in possession of the same by a tenant, and was receiving a portion of the crops, and that the land was worth $1,600.

That she relied upon these representations, and was induced by them to convey to him her land, believing she was receiving from him a warranty deed conveying a good title to the Arkansas land, while, in fact, the representations so made were false and fraudulent.

That defendant was not in possession of the lands, by tenant or otherwise, and never had been; was not receiving, nor entitled to receive, any portion of the crops.

That said lands were not of the value of $1,600; and that defendant had no title whatever to said lands, or any part thereof.

The defendant denies making any such representations, and claims that he agreed to convey the Arkansas lands only by deed containing a special warranty or covenant against his own acts, and gave just such a deed as he represented he would give. Defendant also claims that he tried to have

plaintiff's husband go down to Arkansas, look at the lands in question, together with other lands, and satisfy himself as to value, location, and title; and that he advised plaintiff and her husband that he had never seen these lands, and knew nothing about them, except as he had been advised by Mr. Hughes, from whom he purchased.

At the close of the testimony the defendant requested the court to charge the jury:

"1. The plaintiff in this case having failed to prove any of the misrepresentations alleged and set forth in her declaration, your verdict must be for the defendant.

"2. Fraud cannot be inferred, and must be strictly proven by the party claiming it; and in this case the plaintiff must prove it by a fair preponderance of evidence.

"3. Plaintiff must show, by a fair preponderance of evidence, that the misrepresentations alleged in her declaration were in fact made by the defendant, or your verdict must be for the defendant.

"4. If you find that the defendant tried to have plaintiff or her husband go down to Arkansas, and look at the lands, and satisfy themselves as to the value, location, and title, this will be a strong presumption that no fraud was intended.

"5. If you find, from the evidence, that defendant stated to plaintiff and her husband, or either of them, that he had never seen the land, and knew nothing about it, then there can be no case of fraud made out concerning anything he told them, or either of them, and your verdict must be for the defendant.

"6. If you believe, from the evidence given in this case, that the deed given by defendant was read over to plaintiff, and that they accepted the deed after such reading, then you cannot find that there was any fraud in giving the deed, as the plaintiff was fully apprised of its contents; and if you believe, from the evidence, that the deed was read over to plaintiff before she accepted it, then you are wholly to disregard any testimony given as to the kind of deed that was to be given, as by the giving and acceptance of the deed any parol testimony to contradict it could not be given; and that any matter or thing that was brought to the knowledge of plaintiff's husband is as binding, and has as much force against the plaintiff, as if the same had been brought to her

knowledge, as plaintiff admits that her husband acted as her agent, and notice to the agent is notice to the principal.

"7. In case the defendant makes out, by a fair preponderance of evidence, that defendant told plaintiff or her husband that he knew nothing about these lands, then your verdict shall be for the defendant."

Twenty errors are assigned by defendant's counsel.

The first relates to the motion made by counsel to dismiss plaintiff's case after the opening of her counsel, and before any evidence had been offered.

If this motion was a proper one to be made at that stage of the proceedings, the court was correct in overruling it, and permitting the plaintiff to make the case set out in her declaration. It referred solely to the claim of her counsel upon the measure of damages under the claim made in the declaration. The claim made was that there was an entire failure of consideration for the lands deeded by plaintiff to the defendant; that she had deeded him certain lands called in the exchange worth $1,100, and actually worth that, and for which she had received no consideration, by reason of the fact that the defendant's title absolutely failed to the lands he pretended to convey; that in fact he conveyed nothing, and gave nothing for her lands.

The other facts set up in the declaration were matters of inducement to the exchange, and relied upon as such; the main fact being that she had been defrauded out of her lands by these representations, which were false.

Under such circumstances, the rule is well settled that the measure of damages is the actual value of the land or other thing lost, or out of which the party has been defrauded. There are cases where, undoubtedly, the measure of damages would be the difference in value between the property obtained as it actually is and what it is represented to be. But here nothing was obtained. There was an entire failure of consideration, and she had been induced to part with the title and possession to the property by these false and fraudulent

representations. In this view of it, the value of the plaintiff's land became an important inquiry, and the court was not in error in admitting such evidence of value.

We shall not discuss all the assignments of error, as some of them cover questions which were properly and fairly submitted to the jury.

The first request to charge was properly refused by the court.

There was some evidence of fraud and misrepresentation, and these questions belonged to the jury, under proper instructions.

There seems to be no dispute upon this record that the defendant had no title to these Arkansas lands. In fact, in the light of the letters written by him to plaintiff's husband long after the exchange was made, it is apparent that he was not insisting that he could give possession, or that the plaintiff was bound to accept them, as he proposed to find other lands for her in Arkansas. Neither does the defendant insist that he had a tenant in possession at the time of the exchange, from whom he was getting a portion of the crop.

The case was very fully and fairly submitted to the jury upon the question of the false representations by defendant which were the inducement to the exchange, and apparently the jury believed the testimony of the plaintiff and her husband that such representations were made.

The court instructed the jury that fraud will not be presumed, but must be proven, like any other fact, by the party alleging it, by a fair preponderance of evidence; thus giving the charge almost in the language of the defendant's request.

The trial court refused to give the defendant's fifth, sixth, and seventh requests in charge to the jury, but charged that,—

"If you believe from the evidence that the defendant tried to induce the plaintiff or her husband to go to Arkansas to see the land he proposed to trade, and investigate the title, or

that he stated before the trade that he had never seen the land, or that the plaintiff or her husband or her agent heard the deed read, and accepted it, then these facts may be taken into consideration by you in determining the question whether she was deceived and defrauded."

The contention on the trial, on the part of the plaintiff and her husband, was that, after the deed to their land had been drawn by the lawyer to whom all the parties had gone for this purpose, the lawyer read over the description only in the deed given by the defendant of the Arkansas lands, and that they had never heard the whole deed read.

The defendant contended that the whole deed was read over, and that it was such a deed as he had agreed to give.

Whether the deed was fully read over or not, it seems to us, is a question of not very much moment, under the circumstances. It is apparent from the testimony in the case, which is wholly undisputed, that the defendant approached the plaintiff and her husband on the subject of the exchange of lands, and represented that he was the owner of these Arkansas lands; that he had a tenant in possession, from whom he was getting a portion of the crops, etc.; and that they were of the value of $1,600.

The further undisputed facts are that he was not the owner of these lands, had no title to them, had no tenant in possession, and was not getting a portion of the crops; in fact, had neither title nor possession to convey.

The plaintiff parted with her lands in full belief of the truth of the facts stated by defendant. Then, whatever the form of the conveyance may have been, under the circumstances, could not matter. The representations were false and fraudulent, and by means of these the plaintiff lost her lands, and defendant obtained them, by and under a deed made by plaintiff sufficient in all respects to convey the title.

We think, also, that the trial court went as far in his charge as the facts warranted upon the question of the

defendant trying to induce plaintiff's husband to go to Arkansas to look over these lands before the trade was made. The very purpose of the offer may have been, as its obvious effect was, to throw the plaintiff and her husband off their guard, and to allay any suspicion there might have been in their minds as to the character and condition of the lands in Arkansas.

The court, in his charge, directed the jury to take these matters into consideration, in determining whether the plaintiff was deceived and defrauded.

The court could not say, as a matter of law, that, by reason of this attempt to induce plaintiff's husband to go to Arkansas, no case of fraud was made out. It was a question of fact for the jury, and very properly submitted to them.

Some question is raised as to the right of plaintiff's counsel to read the testimony of Mr. Thomas J. Crawford in the present case. It appears that an action in *assumpsit* had been commenced by the plaintiff against defendant to recover for the same damages. While that action was pending, the testimony of Mr. Crawford was taken in that case. That case was subsequently discontinued, and the present action commenced, and the testimony of Mr. Crawford read.

The actions are identical as to the parties, commenced in the same court, and for a recovery of the same damages, and they only differed in form. The court was not in error in permitting the deposition to be read. How. Stat. § 7472.

Some question is raised by defendant's counsel that the court was in error in permitting to be read in evidence certain certificates from the General Land-office, showing title in Mr. Thomas J. Crawford to the Arkansas lands. This question might have become important if the defendant had been insisting upon the trial in the court below, or in this Court, that he had any title to these lands, or any rights of possession; but the trial seems to have proceeded there upon the theory that defendant gave plaintiff all the deed he

agreed to give, and that he was not bound to protect her title, and had been guilty of no fraud in the transaction.

No claim was made in the court below that the defendant had any title to the lands when he made his deed, or ever had, or that he had any right of possession superior to that of Mr. Crawford; and after the exchange was made the defendant seems to have conceded, before the litigation commenced, that he had no claim upon the Arkansas lands, and no title to convey.

The whole case was very fully and fairly submitted to the jury under the theories of the respective parties, and we find no error in the record of which the defendant can complain.

The judgment of the court below must be affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and CAMPBELL, JJ., concurred. MORSE, J., did not sit.