SMITH *v.* MICHIGAN REALTY & CONSTRUCTION CO.

1. BROKERS—PRINCIPAL AND AGENT—FRAUD—SCOPE OF AUTHORITY —MASTER AND SERVANT.

   The sales agent of real estate brokers having authority to sell its property, acts within the scope of his authority in exhibiting a parcel of land to a prospective purchaser and calling attention to its location, desirability and attractive features; fraudulent representations made in so doing concerning the location, size, or dimensions of the lot resulting in a sale render the principal liable to a purchaser deceived by the agent.

2. FRAUD—FALSE REPRESENTATIONS—VENDOR AND PURCHASER.

   The purchaser of a lot which defendant's sales agent described to her as the parcel adjoining, that was owned by another person and of greater value, need not show valid contract to convey the adjoining lot, in order to entitle her to bring an action for deceit.

3. SAME—SALE OF REAL ESTATE—RESCISSION.

   Such purchaser might disaffirm the sale, tender back a conveyance of the realty and on refusal to repay the purchase price bring an action therefor, or might at his or her option affirm the contract and bring an action for the damages.

4. DAMAGES—DECEIT—VALUE.

> In an action for misrepresentations as to the location of a lot purchased of defendant, plaintiff is entitled to recover the difference between the value of what she would have received if the representations had been true and the value of what she actually received.

Error to Genesee; Wisner, J. Submitted April 22, 1913. (Docket No. 112.) Decided May 28, 1913.

Case by Eliza A. Smith against the Michigan Realty and Construction Company for fraud and deceit. Judgment for plaintiff. Defendant brings error. Affirmed.

*William V. Smith,* for appellant.

*Mark W. Stevens,* for appellee.

KUHN, J. The defendant corporation in the year 1910 was engaged in the real estate business in the city of Flint, buying and selling land and acting as agent in buying and selling land for others, and also in the construction of buildings. Block 16 of the Oak Park subdivision of the city of Flint is bounded on the north by Baker street and on the east by Industrial avenue, which runs north and south between block 16 and the location of the automobile plant known as the Buick, which extends along the east side of Industrial avenue opposite block 16. Industrial avenue is a paved street 60 feet wide; the paving being 40 feet wide along the middle. The corner lot of said block 16, which lies along Industrial avenue and fronts on Baker street, is lot 16, which has 50 feet frontage on Baker and 135 feet deep on Industrial avenue. Lot 15 is of the same size and is next west of lot 16.

On January 10, 1910, the defendant owned lot 15, and lot 16 was owned by the Buick Motor Company. The plaintiff at this time learned through a Mr. Feazel that the defendant had a certain lot for sale and

Feazel, at the request of the plaintiff, visited the offices of the defendant to obtain information concerning the said lot. It is the claim of the plaintiff that Feazel was informed by George R. Gardiner, in the employ of the defendant company, that defendant had a lot for sale which was not exactly a corner lot, but that there were 15 feet between it and Industrial avenue which were to be reserved for ornamental purposes and for flowers and shrubberies, and it is claimed that Gardiner at that time drew a sketch upon a card showing the lot to be within 15 feet of Industrial avenue, which card was taken by Feazel to the plaintiff and submitted to her; that, several days thereafter, plaintiff visited the locality and there saw a sign on a tree, which read as follows: "For sale by the Michigan Realty and Construction Company." It is undisputed that the tree in question was on lot 16. It is the further claim of the plaintiff that she later visited the offices of defendant and there had a conversation with Gardiner concerning the lot, and that he at that time stated that the lot was within 15 feet of Industrial avenue and commenced at a point opposite a hydrant on Baker street and ran west 50 feet. This hydrant was located by the city engineer to be 17 feet west of the curb on Industrial avenue.

Plaintiff claims that, relying upon these representations, and believing that she was buying the property which subsequently was shown to be lot 16, she, on the 10th day of January, entered into an agreement by which she proposed to purchase from defendant lot 15 for the sum of $750, of which $50 was paid in cash. On the 27th day of January, 1910, the defendant executed a deed of said lot 15 to Peter Tierney and Harry J. Tierney and received the balance of the purchase price of $700 in cash. This deed was made to Peter Tierney and Harry J. Tierney, at the request of the plaintiff, to secure the payment of $600 which

had been negotiated as a loan in order to enable her to pay the purchase price of the lot, and she received from Tierney Bros. a contract for the purchase of said lot, which transaction was in the nature of a mortgage to secure Tierney Bros. for the money advanced by them. Plaintiff also claimed that when she obtained the deed to the property she called upon Gardiner and told him that she would like to have the sign removed from her lot and from the big tree, and that it was removed.

Some time thereafter the plaintiff attempted to sell the lot she supposed she had purchased, and, upon an investigation being made, the prospective purchaser informed her that she did not own the lot she was attempting to sell. Upon learning of this fact, plaintiff called upon Mr. Symons, who was the general manager of the defendant company, and who at that time was in Saginaw, and upon obtaining no satisfaction from him she brought suit to recover damages because of the claimed representations made by Gardiner and recovered a verdict of $950, upon which judgment was had. This defendant seeks to review by writ of error.

Defendant's counsel has preferred 19 assignments of error, but has not discussed all of them, and such as are not so treated we will consider as abandoned. Supreme Court Rule 40; *Carmer* v. *Hubbard,* 123 Mich. 333 (82 N. W. 64) ; *Walker* v. *Mack,* 129 Mich. 527 (89 N. W. 338) ; *Board of Education* v. *Van Der Veen,* 169 Mich. 470 (135 N. W. 241).

The first question raised which we will consider is the claim of appellant that Gardiner, the agent, had no authority to sell her the lot she claims she purchased. It is claimed that he simply held a subordinate position and had no written authority to sell anything. On cross-examination Gardiner testified as follows:

"I was sales manager and as such authorized to sell the various real estate that we had for sale. I met and talked with various customers about the land we had for sale. If we could agree upon the price, I was authorized to finally make a contract of sale in behalf of defendant, and when deed was afterwards given it would be given by the Michigan Realty & Construction Company, the defendant. In making these contracts I would generally sign the name of defendant by myself as sales manager. I wasn't a bona fide agent to make terms; they were submitted to the office. In all these things, making terms, making a contract in this case, I was acting for the defendant. (Plaintiff's Exhibit 3 then shown to witness.) The signature is that of the plaintiff, Mrs. Smith, and that of the defendant by myself as sales manager. Afterwards this contract was ratified by giving a deed. I made various contracts with other people for other lots similar to this and made terms at the stated price; and defendant finally gave deeds. I was agent for selling the property. There was a man there inquiring about this property in Mrs. Smith's behalf, I don't remember his name. I had some talk with him as to the property that was sold to Mrs. Smith."

Mr. Symons, the general manager of the defendant company, stated that Gardiner's authority was as follows:

"Mr. Gardiner was the salesman, and it was his business to offer lands for sale to prospective purchasers and to make the terms and conditions made by me and given to him. The price was fixed by me. He had authority to name the price fixed by the office."

So that we have the agency of Gardiner established to make contracts for the sale of lands, subject to the approval of the principal. Mr. Mechem, in his work on Agency (section 311), lays down this rule:

"Authority carries with it every power necessary to accomplish object. Every delegation of authority, whether it be general or special, express or implied, unless its extent be otherwise expressly limited by some instrument conferring it, carries with it, as an incident, the power to do all those things which are

necessary, proper, usual, and reasonable to be done in order to effectuate the purpose for which it was created. It embraces all the appropriate means to accomplish the desired end. This principle is founded on the manifest intention of the party creating such authority and is in furtherance of such intention."

It certainly is within the scope of the authority of the ordinary real estate agent to show to prospective purchasers the property which he desires to sell and to call attention to its location and make representations as to its desirability and attractive features. The trial judge, in charging the jury upon this phase of the case, stated the law applicable—we think properly—as follows:

"Now, an agent in order to bind his principal must act within the scope of his authority, that he cannot go outside of those things which naturally pertain to the employment with respect to which he is acting as agent, and I charge you that as matter of law in my judgment an agent having authority to make contracts to sell, subject to approval, lands of his principal, is acting within the scope of that authority when he exhibits to a prospective purchaser the lot or piece of land that he claims he has sold."

*Leo Austrian & Co.* v. *Springer,* 94 Mich. 343 (54 N. W. 50, 34 Am. St. Rep. 350) ; *Marx* v. *King,* 162 Mich. 258 (127 N. W. 341) ; *McBroom* v. *Malting Co.,* 162 Mich. 323 (127 N. W. 361).

It is the claim of the plaintiff that she was misled by the fraudulent misrepresentations of Gardiner and induced thereby to buy lot 15. It is not claimed that she had an enforceable contract as to the lot 16 which she thought she purchased, and no claim is made that she could enforce specific performance, as it is manifest that the defendant was in no position to perform, not having the title to the property. It is urged that in order to enable plaintiff to recover it was incumbent upon her to show a valid and enforceable contract, under the statute of frauds of this State,

which would entitle her to lot 16. With this we cannot agree, for the reason, as has been stated, that no claim is being made to enforce such a contract, nor is it being relied upon. This action is for fraud and deceit, and it is well established that, when a person is led to make a contract to purchase property through fraudulent and false representations and claims to be injured thereby, he may either disaffirm the sale, tender a reconveyance of the property with a demand to refund the purchase money, and, if refused, may bring suit to recover the same, or affirm the sale and bring suit for damages.

The latter is the position taken by the plaintiff in this case, and the only other question for us to consider is whether the proper rule of damages was submitted to the jury by the trial court. He said with reference thereto:

"If you find for the plaintiff, the measure of damages is the difference in value between the lot she supposed she was contracting for and the lot actually covered by the contract and deed; that is, was lot 16 on January 10, 1910, of more value than lot 15, and, if so, how much? And as you answer that question so will be the amount of the verdict, if anything?"

No case or authority has been called to our attention presenting a similar state of facts, but by analogy and proper reasoning the conclusion must be arrived at that the trial judge presented the rule applicable properly.

Testimony was introduced to show that on the 10th day of January, 1910, the corner lot was worth $1,000 more than the lot adjoining, and, if the fraudulent representations were made as claimed by plaintiff, she was entitled to recover damages commensurate with the injury. She had a right to make as good a bargain as she could and was entitled to receive what was represented to her, and when this was not done she had a right to compensation for whatever loss natur-

ally and approximately resulted from the fraud. The rule is laid down in 20 Cyc., on page 132, as follows:

"It has been frequently laid down that in an action based on fraud in the sale or exchange of property, if plaintiff retains the title and does not offer to rescind, the measure of damages is the difference between the actual value of the property at the time of the sale or exchange, and what it would have been worth had it been as represented, or what its value was represented to be, and that this measure of damages applies without regard to the price paid or the value of the property given in exchange by the party defrauded, for it cannot always be said that plaintiff has suffered no injury because the bargain induced by the fraud was not a bad one and he has received the worth of his money. Plaintiff's right of recovery is determined by the position which he would have occupied had there been no fraud, and he is entitled to the benefit of his bargain on this basis."

In *Aldrich* v. *Scribner,* 154 Mich. 23 (117 N. W. 581, 18 L. R. A. [N. S.] 379), which was an action for deceit in misrepresenting the character of real estate exchanged, this court held that the proper rule of damages would be the difference between the value of the property had it answered to the representations relied upon by plaintiffs and its value as it actually was. See, also, *Page* v. *Wells,* 37 Mich. 415; *Painter* v. *Land Co.,* 164 Mich. 260 (127 N. W. 739, 130 N. W. 205); *Woolenslagle* v. *Runals,* 76 Mich. 545 (43 N. W. 454); *Yanelli* v. *Littlejohn,* 172 Mich. 91 (137 N. W. 723); *Chapman* v. *Bible,* 171 Mich. 663 (137 N. W. 533).

Mr. Mechem, in his work on Sales (section 1843), in speaking of this rule, says:

"We are clear that the best reason is with the doctrine that, where one is deceived and defrauded, he can recover as damages the difference between the value of what he would have obtained had the statement been true, and the value of what he actually received. This represents his actual loss by reason of

the fraud of the seller, on the theory that he does not rescind the contract."

See, also, 4 Sutherland on Damages (3d Ed.), § 1171.

The case was submitted to the jury under proper instructions, and the judgment is therefore affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.