PETER RUPPE ET AL v. THOMAS W. EDWARDS.

*Statute of frauds—Promise to pay another's debt.*

1. A man who got some supplies from a merchant said they were for a certain lumberman, who, as the merchant knew, had been the man's employer and had cashed his orders. The merchant wrote to the lumberman's bookkeeper notifying him of the purchase and asking him to send an order to give the man supplies "if O. K." The book-keeper wrote back "I think it will be O. K. for about one hundred dollars at present." *Held* that this correspondence could not establish a contract on the part of the lumberman to pay for the supplies; and that even if he said it was all right on hearing of the correspondence, he would not be bound, as this would amount at most to a parol promise to pay the debt of another.

2. A book-keeper has no authority as such to make his employer liable for the debts of a third person. .

3. A promise to pay another's debt is void under the Statute of Frauds unless in writing and signed by the person promising or by his duly authorized agent.

Error to Houghton. (Williams, J.) Jan. 8.—Jan. 22.

ASSUMPSIT. Defendant brings error. Reversed.

*Alexis C. Angell, T. L. Chadbourne* and *Ashley Pond* for appellants.

*Chandler & Grant* for appellees.

SHERWOOD, J. This action is assumpsit to recover for goods sold and delivered by plaintiffs, who were merchants doing business at L'Anse, to one Edward St. Arnault who had been for some time previous in the employment of the defendant, and who had been accustomed to trade with plaintiffs, giving orders on the defendant for his pay, and defendant would accept and pay them to the amount of his indebtedness to St. Arnault.

In the fall of 1879 the defendant resided at Houghton and was carrying on business there. About that time the

defendant arranged with St. Arnault to cut some timber owned by defendant. By the arrangement St. Arnault was to cut the timber, Edwards to sell the logs, keep of the proceeds one dollar per thousand, and pay St. Arnault the rest after deducting stumpage and the amount of any supplies furnished by defendant. This took St. Arnault into the woods, and supplies became necessary.

In October, 1879, he applied to the plaintiffs to furnish him goods for a lumber camp, informing them at the same time that he was logging in defendant's timber. Plaintiffs let him have some goods and then refused to let him have more unless he would obtain an order from the defendant who was absent from his home. St. Arnault then said to the plaintiffs if they doubted his word they could write to J. P. Edwards, who was a brother of defendant and his book-keeper, and who had charge of the business during defendant's absence. Accordingly the plaintiffs wrote the following note to J. P. Edwards:

"L'ANSE, MICH., Oct. 28, 1879.
*Mr. J. P. Edwards, Houghton, Mich.*—DEAR SIR: Ed. St. Arnault has got some goods, mostly camping utensils. He said they were for T. W. Edwards, for lumber camp. Will you please send us order to give him supplies if O. K.
Yours respectfully,      P. RUPPE & SON."

To this note J. P. Edwards made the following reply :

"*P. Ruppe & Co.:* I think it will be O. K. for about one hundred dollars at present."

The plaintiffs furnished to St. Arnault and his men goods to the amount of $913.43, of which $55.80 was for whisky, and $439.34 for wages of men in St. Arnault's employ in the woods.

The case was tried at the Houghton circuit, and the plaintiffs had judgment for the amount of their claims. The defendant brings error, and the case is now before us on bill of exceptions containing a summary of all the testimony given in the case. A large number of exceptions were taken, but few need be considered. Many of them were abandoned upon the hearing.

The principal question in the case is, Was the defendant properly chargeable with the goods furnished St. Arnault? The testimony relied upon by the plaintiffs upon this point is the foregoing correspondence had with defendant's book-keeper, and the fact that the defendant saw the account upon the plaintiffs' ledger after the goods were delivered, charged under the following heading: "Edward St. Arnault's camp; for T. W. Edwards." The goods were furnished at different times through the winter. The defendant was absent a portion of the time, and he expressly states that he never knew of the foregoing correspondence between his book-keeper and the plaintiffs until it was shown him on the trial, and this fact is undisputed. He further says that the book-keeper had no authority to pledge his credit, and the prior relations and dealings between the plaintiffs and St. Arnault were not of a character to induce the belief that the latter could use the defendant's credit without express authority, and the fact that the plaintiffs tried to get written orders from defendant to let St. Arnault have goods is very strong evidence that verbal or implied authority was not relied upon.

It is claimed by counsel for plaintiffs that the foregoing letters constitute a contract by which the defendant became responsible for goods to the amount stated in the J. P. Edwards letter. The business in which T. W. Edwards was engaged at Houghton does not appear from the record, but whatever it may have been it does appear that his book-keeper, J. P. Edwards, was authorized to take charge of it for defendant in his absence, and open and answer his letters. Such authority, however, would not give the book-keeper power to make his employer liable for the debts of a third person, and we do not think he intended to or did make the defendant liable when he answered the letter of plaintiffs; and there is nothing in the prior dealings or general usage of the parties, or in the business the defendant did with them and St. Arnault, which furnished any reason for plaintiffs to suppose that the book-keeper had any such authority. No such authority can be implied as a matter of

law by reason of his employment. *N. Y. Iron Mine v. Negaunee Bank* 39 Mich. 644; *Davidson v. Stanley* 2 Man. & G. 271; *Clayton v. Martin* 31 Ark. 217; *Meyer v. Baldwin* 52 Miss. 263; *Doan v. Duncan* 18 Ill. 96.

But a proper construction of the reply to plaintiff's letter, we think, clearly shows that the language imports no promise or assumption of St. Arnault's debt to plaintiffs, or any part thereof. The plaintiffs' letter was not addressed to the defendant but to his book-keeper, and the latter simply gave the plaintiffs his opinion about the extent to which the plaintiffs might safely trust St. Arnault. The defendant certainly could not be bound to make good his clerk's opinion. The reply is not sufficient to authorize an account to be opened against T. W. Edwards for goods purchased by St. Arnault.

It will be further noticed that the plaintiffs' letter shows they had already, without that expression of opinion from the book-keeper in the reply, let St. Arnault have some goods. It is true there is testimony in the case showing that when the plaintiffs' clerk, Campbell, called the defendant's attention to the fact that such correspondence had taken place, he replied 'that is all right'; but that did not help the plaintiff's case, because the letter contained no contract for defendant's liability to plaintiffs for the goods, and the court should have so instructed the jury.

There is no pretense that the defendant got any of the goods, or that they have anything but the parol promise of defendant to settle the account after showing it to him on the books, and furnishing him through the mails with a copy. Our statute requires more than this to make a person liable for the payment of the debt of another. The promise to make such payment must be in writing and signed by the party or his duly authorized agent before he can be charged thereby. No such promise was made in this case, and the court charged the jury, "If you find that St. Arnault had no authority to buy goods of plaintiffs in Edwards' name at the start, yet if Edwards consented to and ratified the transaction after he had knowledge of the same,

such ratification and consent would be as good and valid as though the authority had been given before the goods were sold." There was no evidence in the case of any written ratification or promise, and the charge was erroneous.

What we have said renders discussion of the other questions raised of no importance.

The judgment must be reversed with costs and a new trial granted.

The other Justices concurred.