McBROOM *v.* CHEBOYGAN BREWING & MALTING CO.

1. Trial—Findings of Fact and Law—Amendments.
   The refusal to amend findings of fact made by the trial court, without the aid of a jury, is not reviewable in the Supreme Court, where the findings are supported by the evidence.

2. Corporations—Contracts—Authority to Execute.
   A guaranty of the rent of a dwelling house and business building, to be occupied by a saloon keeper, who makes no agreement to buy liquors exclusively of, or to do any other act for the benefit of the guarantor, and who offers no other inducement, is not within the authority of the secretary of the brewing company who executes the guaranty, and who is not its manager, when it was not expressly authorized by the board of directors, and the time of the lease extended far beyond his term of office.

3. Same—Principal and Agent—Holding Out—Estoppel.
   Estoppel is the basis of the doctrine that a principal is bound to third persons who have relied in good faith on the apparent authority of an agent.

4. Same.
   Matters occurring subsequently to the execution of the guaranty are not evidence tending to show that the plaintiff was thereby induced to rely on the authority of the agent.

Error to Cheboygan; Shepherd, J. Submitted June 20, 1910. (Docket No. 108.) Decided July 14, 1910.

Assumpsit by Mollie E. McBroom against the Cheboygan Brewing & Malting Company on a contract of guaranty. A judgment for defendant is reviewed by plaintiff on writ of error. Affirmed.

*James F. Shepherd*, for appellant.

*Frost & Sprague*, for appellee.

Stone, J. This is an action of assumpsit brought upon a guaranty of lease bearing date March 30, 1905. At that

date the plaintiff was the owner of a business building on Main street, in Cheboygan, and a dwelling house immediately back of the same, fronting on Water street. Max Schoenith was a saloon keeper, who, prior to March 30, 1905, had occupied the business building for a saloon and the house back of it for a residence. On that day he and the plaintiff executed a lease from her to him of the premises in question for five years from the date, under which the rent reserved for both properties was $44 per month. One of the conditions of the execution of the lease was that the rent should be guaranteed. Schoenith at the time he executed the lease was a customer of defendant, buying his beer from it. The defendant is a Michigan corporation, organized for the purpose of manufacturing and selling lager beer and malt. On the same day and soon after the execution of the lease, the plaintiff's agent took the lease, with the contract guaranteeing the payment of the rent printed thereon, to the office of the defendant, and the guaranty was signed "Cheboygan Brg. & Malting Co., per S. Wilhartz, Mgr." It was later signed by William H. Craig as a co-surety, but he was not served with process. The contract of guaranty reads as follows:

"In consideration of the letting of the premises in the foregoing instrument described, and for the sum of one dollar, to them paid, they do hereby become surety for the punctual payment of the rent and performance of the covenants in said instrument mentioned, to be paid and performed by the second party therein named; that if any default shall at any time be made therein, they do hereby promise and agree to pay unto the said party of the first part named in said instrument, the said rents and arrears thereof that may be due, and fully satisfy the conditions of said instrument, all damages that may occur by reason of the nonfulfillment thereof, without requiring notice or proof of the demand being made.

"Witness their hands and seals this 30th day of March, 1905.

"CHEBOYGAN BRG. & MALTING CO.,
"Per S. WILHARTZ, Mgr.   [L. S.]
"WILLIAM H. CRAIG."

The case was heard before the court without a jury, and the following findings of facts and of law were filed, before judgment:

## "Finding of Facts.

" (1) The plaintiff in this case sues upon the obligation covered by the lease and the guaranty set out in the declaration as Exhibit A.

" (2) Prior to the time of making Exhibit A, Mr. Max Schoenith, the lessee, in Exhibit A, had been renting the saloon building from the plaintiff, paying therefor $30 a month. At the time of making this lease, Exhibit A, he rented the saloon building, which had been previously occupied by him as a saloon, and was thereafter similarly occupied by him, and also the house on Water street immediately adjoining the same piece of property. The saloon is on lot 17, the first described property in said lease, the house is on lot 18, the second described piece of real estate. The agreed price at that time was $9 for the house and $35 for the saloon building. The amounts were not separately stated in the written contract but each of the lots is described, and it appears from the face of the lease that the property was to be occupied 'for a retail liquor business and residence of his family.'

" (2½) The defendant, Cheboygan Brewing & Malting Company, is a Michigan corporation, organized, as stated in its articles of association, for the purpose of the manufacture and sale of lager beer and malt.

" (3) The defendant company changed its list of stockholders completely on February 1, 1905. On that day Mr. Moloney and the old stockholders held their last meeting and adjourned to Minneapolis, and on the same day transferred their stock to new purchasers who held a meeting in Minneapolis on February 7, 1905, and elected their board of directors, who in turn, on the same day, elected Mr. Barnum as president, Mr. Rutherford as treasurer and assistant secretary, and Mr. Wilhartz as secretary. Special authority was given to Mr. Rutherford to collect all moneys and deposit them in the bank and to check against same, evidently in the name of the company, and a resolution was passed authorizing Mr. Rutherford to create a special fund of $1,000 against which Mr. Wilhartz could check. Mr. Wilhartz was not elected general manager and was not expressly given any such powers; on the contrary his specified powers were limited even as secretary.

" (4) The testimony shows that Mr. Barnum, the president, spent much of the first year in Cheboygan.   He had the power to, and did, draw checks, as did also Mr. Rutherford.

" (5) Mr. Wilhartz was never authorized by the defendant company to make the contract sued on in this case, or any one similar to it.   The making of this contract was never known to any of the officers, directors, or stockholders of said company, neither were any of the alleged conversations or acts, if any, of Mr. Wilhartz which were subsequently done through Mr. Harpster, or Mr. Schoenith, or Mr. Moloney, known to any of the stockholders, officers, or directors.

" (6) Mr. Schoenith bought beer of the company previous to the making of this contract and subsequent thereto.   There is no testimony of any kind of any agreement between Mr. Schoenith and the company or Mr. Wilhartz that if the company or Mr. Wilhartz would sign the guaranty lease Mr. Schoenith would buy of them his beer, and there is no testimony of any benefit contemplated or received by the company by virtue of the undertaking sued on.

"(7) It appears that at the time of the making of the lease one Alexander Grieve was acting as the agent of the plaintiff in renting the property.   After Mr. Wilhartz signed the guaranty Mr. Grieve took Exhibit A to Mr. Craig who signed.   There is no evidence of any notification by Mrs. McBroom or any one for or in her behalf given to the defendant company of her acceptance of the arrangement created by the signing of the instrument by the defendant company, except the evidence of Mr. Grieve as to his agency, and that he took the paper to Mr. Wilhartz who signed, and thereafter he, Grieve, took the same away for Mr. Craig's signature.

"(8) The testimony shows that Mr. Wilhartz never signed, either before or afterwards, the company's name to any similar guaranty to that shown by Exhibit A. The testimony also shows that previous to the making of this lease he never indorsed any of the company notes, though at a later date his authority was increased to include the indorsement of company notes of purchase. Mr. Wilhartz drew checks previous to the making of Exhibit A as well as afterwards.   He was the officer of the company coming most in contact with the public and most active in making sales.

" (9) Mr. Schoenith was not joined as a defendant.

" (10) The lease in question, the guaranty of which was sued upon, covered rent for the term of five years from and after the 1st day of May, 1905, for the premises to be occupied by Mr. Schoenith in his business, and also for the house which he and his family occupied.

" (11) There is no evidence that the plaintiff or any one acting for or in her behalf either saw, knew of, or relied upon any acts of Mr. Wilhartz indicating that the company were holding him out as having authority to execute such a guaranty. Neither plaintiff nor her agent gives any such testimony.

### "Findings of Law.

" (1) The failure to join Schoenith in the proceeding may not be taken advantage of under the general issue here pleaded.

" (2) Acceptance by plaintiff by her agent, Grieve, is sufficiently proved.

" (3) The contract sued on is not *ultra vires* the corporation.

" (4) Mr. Wilhartz was the manager of defendant corporation, having charge of its office and authorized, through the holding out by the defendant, to make such contracts as may be presumed to be made by a general agent; however, the extension of a guaranty for so long a term beyond the saloon year would be beyond the power of any general agent aside from the board of directors, and perhaps even them.

" (5) There was nothing in such holding out of Mr. Wilhartz's authority as would warrant any one, without inquiry, to accept his authority to execute the contract sued upon.

" (6) Judgment shall be entered in favor of defendant of no cause of action."

The plaintiff brings error. The first 11 assignments of error relate to rulings of the court in the admission of evidence. We have examined them with care, and find no error. There would be no profit in discussing them at length.

The 12th and 13th assignments of error deal with the refusal of the court to amend the findings of fact as proposed by plaintiff. This court held in *Beal* v. *Polhemus,* 67

Mich. 130 (34 N. W. 532), that the refusal to allow amendments to findings of fact is not a subject of review in this court, where, as in this case, the findings are supported by the evidence.

The 14th assignment of error is based upon the refusal to strike out in findings of law No. 4 all after the word "agent" in the fourth line, and insert:

"The defendant's secretary and general manager, Mr. Wilhartz, as general agent, had the authority to execute the lease in question. It was in the promotion of the corporate purposes of the defendant."

The 15th and 16th assignments of error relate to the judgment entered.

It will not be necessary to discuss the first three findings of law more than to say that the evidence in the case does not bring it within the ruling in *Timm* v. *Brewing Co.*, 160 Mich. 371 (125 N. W. 357). The record here fails to show any agreement to buy beer exclusively or otherwise by Schoenith from the defendant, or any agreement that would tend to benefit the defendant, or did benefit it; or any inducement held out to defendant; and the guaranty related to the rent of the dwelling house as well as the saloon

Referring to the 14th assignment of error relating to the fourth finding of law, it should be stated that Mr. Wilhartz became secretary of the defendant on February 8, 1905. It is undisputed that at the time of the signing of the guaranty he was secretary of the company, but was not its manager. As a matter of fact, he did not have authority to sign the instrument sued upon, or to do any similar act. No such authority had been conferred upon him by the board of directors. It was an unusual and extraordinary act. We have held that such an officer would not have implied power to sign commercial paper, or pledge the credit of the company to the payment of a debt of a third party. Here he assumed to guarantee the payment by a third party of rent for a period of five years, and far beyond his term of office. He had no express au-

thority. *New York Iron Mine* v. *First Nat. Bank of Negaunee*, 39 Mich. 644; *Ruppe* v. *Edwards*, 52 Mich. 411 (18 N. W. 193); *McLellan* v. *Detroit File Works*, 56 Mich. 583 (23 N. W. 321); *Stilwell-Bierce & Smith-Vaile Co.* v. *Paper Mill Co.*, 115 Mich. 35 (72 N. W. 1107); *Gould* v. *W. J. Gould & Co.*, 134 Mich. 515 (96 N. W. 576, 104 Am. St. Rep. 624). We are of opinion, also, that under the doctrine of the case of *Laird* v. *Lubricator Co.*, 153 Mich. 52 (116 N. W. 534, 17 L. R. A. [N. S.] 177), Mr. Wilhartz had no such authority.

It only remains to consider whether Mr. Wilhartz was, by defendant, clothed with apparent authority—whether he was "held out" by the defendant as having authority to sign this guaranty. Plaintiff can only bring to her support such "holding out," and clothing with apparent authority, as was had and done before the execution of the instrument sued on, and upon which plaintiff relied. Estoppel is the basis, and the principle is that the other party must have been induced to act upon the "holding out." The principal is bound to third persons *who have relied thereon* in good faith by the apparent authority he has given to the agent. 31 Cyc. p. 1331 *et seq.;* 1 Am. & Eng. Enc. Law (2d Ed.), pp. 989, 990; Mechem on Agency (Ed. of 1889), § 84; *Jewett* v. *Bryant*, 159 Mich. 345 (123 N. W. 1097); *Davis* v. *Kneale*, 97 Mich. 72 (56 N. W. 220); *Wierman* v. *Sugar Co.*, 142 Mich. 422 (106 N. W. 75). In the case last cited, Justice Grant said:

" The apparent power of the agent is to be determined by the acts of the principal, and not by the acts of the agent."

See, also, *Heffron* v. *Armsby*, 61 Mich. 505 (28 N. W. 672); *Barry* v. *Insurance Co.*, 62 Mich. 424 (29 N. W. 31); *Verdine* v. *Olney*, 77 Mich. 310 (43 N. W. 975); *Leo Austrian & Co.* v. *Springer*, 94 Mich. 343 (54 N. W. 50, 34 Am. St. Rep. 350); *Hirschmann* v. *Railroad Co.*, 97 Mich. 397 (56 N. W. 842). See language of

Justice HOOKER in *Clark* v. *Dillman*, 108 Mich. 627 (66 N. W. 570).

We are unable to find in this record any "holding out" by the defendant which was relied upon by the plaintiff when or before the guaranty was signed. The plaintiff was not a witness, and her agent does not testify to any such act. Practically all of the testimony as to the "holding out," relates to matters subsequent to the signing of the guaranty. Certainly, such matters did not induce the plaintiff to rely upon the apparent authority of Mr. Wilhartz.

Plaintiff cites *Constantine* v. *Sugar Co.*, 132 Mich. 487 (93 N. W. 1088). The case is readily distinguishable. There the manager and secretary was held to be clothed with the power to make a reasonable contract for the benefit of the company's legitimate business. Here the secretary sought to bind the company as surety for a third person.

We think that there was no prejudicial error in the case, and that the circuit judge reached the correct conclusion.

The judgment below is affirmed.

BIRD, C. J., and OSTRANDER, HOOKER, and BLAIR, JJ., concurred.