FIRST NATIONAL BANK OF FAIRFAX v. PACIFIC
ELEVATOR COMPANY AND ANOTHER.

STATE BANK OF FAIRFAX v. PACIFIC ELEVATOR
COMPANY AND ANOTHER.

CITIZENS STATE BANK OF FAIRFAX v. PACIFIC
ELEVATOR COMPANY AND OTHERS.[1]

April 11, 1924.

Nos. 23,850, 23,851, 23,980.

**Proof of due execution of guaranty.**

1. Where a guaranty purports to be executed by a corporation, the statute makes the instrument proof of its due execution unless its execution is denied under oath.

**When corporation can become accommodation surety.**

2. A corporation cannot become a mere accommodation surety for others, unless expressly authorized to do so, but a corporation which is a large stockholder in another corporation has such an interest therein that it may become a surety on its obligations.

**Sureties not released by conditional agreement.**

3. The conditional agreement to apply property of the milling company in payment of its notes was abandoned and rescinded before the holders of the notes acquired the legal right to apply the property thereon, and did not release the sureties on the notes.

Three actions in the district court for Hennepin county to recover upon three promissory notes. The contentions of defendant elevator company are stated in the fifth paragraph of the opinion. The first two cases were tried before Buffington, J., and the third was tried before Molyneaux, J. At the close of the testimony in each case, plaintiff's motion and defendant elevator company's motion for a directed verdict were denied. In the third case the court directed a verdict in favor of defendant T. H. Welch. The jury in

[1]Reported in 198 N. W. 304.

each case returned a verdict for $3,238.01, $4,797 and $4,250.55, respectively. From orders denying its separate motion in each case for judgment notwithstanding the verdict or for a new trial, defendant elevator company appealed. Affirmed.

*H. V. Mercer, Johnson & Company,* for appellant.

*Charles B. Elliott, Elliott, Doll & Coursolle* and *Rieke & Hamrum,* for respondent.

TAYLOR, C.

These three actions were brought against the Pacific Elevator Company to collect the amount of three notes executed by the Crescent Milling Company, payment of which the Pacific Elevator Company had guaranteed. They resulted in verdicts for the respective plaintiffs. The elevator company made an alternative motion for judgment notwithstanding the verdict or for a new trial in each action and appealed from orders denying these motions.

The actions were tried separately, but the same transactions and the same questions are involved in each, and they were argued together in this court. While the records disclose some minor differences, the controlling facts are substantially identical in all the cases.

The plaintiffs are the three banks located at Fairfax, Minnesota. The Crescent Milling Company, a corporation, owned and operated a flour mill at Fairfax and for some years had borrowed money from the banks for use in carrying on its business. The capital stock of the milling company was held in equal amounts by E. L. Welch Company and the Pacific Elevator Company. While this statement may not be quite correct, for some of the stock accredited to these companies may not have been held by the company itself, it is sufficiently accurate for the purposes of this case. The E. L. Welch Company, of which E. L. Welch was president and T. H. Welch secretary, was engaged in the grain commission business in the city of Minneapolis. E. L. Welch was president and T. H. Welch a director of the Crescent Milling Company. The H. Poehler Company was engaged in the grain commission business in the city of Minneapolis and owned a majority of the capital stock of the

Pacific Elevator Company. A. H. Poehler, W. C. Poehler and W. A. Poehler were officers of the Pacific Elevator Company and managed and controlled its business affairs. W. A. Poehler was secretary and W. C. Poehler at times treasurer and at other times vice president of the milling company. All the officers of the milling company resided in Minneapolis. A. R. Darner, who was neither an officer nor stockholder of the company, was in charge of and operated the mill as manager.

In 1921 the H. Poehler Company became financially embarrassed and went into the hands of a receiver. At this time each of the plaintiff banks held notes executed by the milling company and indorsed by the Poehlers or some of them personally. When the H. Poehler Company went into the hands of a receiver, Darner and Welch arranged with the banks to substitute other notes for those indorsed by the Poehlers. Welch procured and Darner presented new or renewal notes executed by the milling company and bearing upon their backs a guaranty of payment signed by the Pacific Elevator Company by W. A. Poehler, Secretary. A. H. Poehler as president also joined in executing some of them. The banks accepted these notes. When they became due they were renewed with the same guaranty, and the present actions were brought upon these renewals.

The elevator company contends: First, that it is not bound by nor liable upon these guaranties; second, that if it was originally liable thereon, it has been released and discharged from such liability.

The guaranties purport to have been signed and executed by the elevator company by one or more of its officers; and, as such execution is not denied under oath in the manner required by the statute, the instruments themselves are proof that they were duly executed by the corporation, and that such officer or officers had authority to execute them. G. S. 1913, § 8448; National City Bank v. Zimmer Vacuum R. Co. 132 Minn. 211, 156 N. W. 265, and cases there cited.

The notes were given for debts of the milling company. The elevator company claims that it was merely an accommodation surety thereon, and was without power to assume such obligations.

It is a well settled general rule that in the absence of express authority therefor a corporation cannot become a surety or guarantor for the benefit of another. See the numerous cases cited in the note found in Ann. Cas. 1913A at page 1313; 2 Fletcher, Enc. Corp. 1869.

But here the elevator company owned nearly one-half the capital stock of the milling company, and, as such owner, was directly interested in the business of that company. Dividends earned by that company would increase the income of the elevator company and enhance the value of its holdings; losses incurred by that company would reduce the income of the elevator company and lessen the value of its holdings. If the milling company should become unable to continue in business for lack of funds, the elevator company might lose its investment and also be subjected to an assessment upon its stock to pay liabilities.

While a corporation cannot become a surety on obligations in which it has no interest, it may guarantee the obligations of its subsidiary companies, and this doctrine has been extended to permit it to guarantee the obligations of others where the purpose is to promote or protect its own rights or property interests, or to accomplish some legitimate object of financial benefit to it, and not merely to aid the primary obligor. The cases are cited and analyzed in Woods Lumber Co. v. Moore, 183 Cal. 497, 191 Pac. 905, 11 A. L. R. 549, and in the annotation found in 11 A. L. R. at page 554.

This court has held that, where a corporation considers the services of an employe valuable, it may guarantee payment of his debt for the purpose of retaining him. M. Burg & Sons, Inc. v. Twin City Four Wheel Drive Co. 140 Minn. 101, 167 N. W. 300.

In Reed v. First Nat. Bank, 23 Colo. 380, 48 Pac. 507, it is said that stockholders who executed a note for the benefit of the corporation were not merely accommodation makers, but that their interest in the company constituted a sufficient consideration to make them liable as principals.

That the interest which a stockholder has in the corporation may constitute a sufficient consideration for a note which he executes for the benefit of the corporation is intimated in Galbraith v. Clark,

138 Minn. 255, 164 N. W. 902, and Northern Nat. Bank v. Douglas, 135 Minn. 81, 160 N. W. 193.

We are of opinion and hold that the elevator company as a large stockholder of the milling company, had sufficient interest therein to empower it to execute the guaranties in controversy, and that it is liable thereon.

The claim that the elevator company was released from liability on its guaranties grows out of the following facts: In March, 1922, Darner was informed by telephone from Minneapolis that the E. L. Welch Company was in financial difficulties and being placed in the hands of a receiver. He at once notified the three banks and held a conference with their representatives. At this conference, Darner as manager of the milling company executed a bill of sale to each bank of property of the company equal in value to the amount of the notes held by the bank. The three bills of sale covered all the grain, flour and other property owned by the company except the mill itself and the machinery therein. As a part of the same transaction the banks and Darner executed an instrument, designated in the record as Exhibit B, which, after reciting the giving of the bills of sale in payment of the notes, reads:

"It is hereby agreed by said banks that said A. R. Darner shall hold possession of the notes so paid with the understanding that payment of said notes is conditional on the proceeds from said goods to be sold paying said notes and not being subject to any proceeding hereafter taken to apply said goods to any other purpose, it being understood that the signers on said notes are not released nor the liability of the Crescent Milling Company satisfied thereon except if payment thereof is received by the proceeds of the sale of said goods as stated.

"In consideration of the foregoing the State Bank of Fairfax, the Citizens State Bank of Fairfax, and the First National Bank of Fairfax, do hereby agree to reconvey said goods to the Crescent Milling Company, if said A. R. Darner has not the right as a matter of law to so apply said goods in payment of said notes."

This instrument was properly admitted in evidence as an integral part of the agreement. While the fact that it was not placed on record, although the bills of sale were, might render it ineffective as against third parties dealing with the property in reliance on the bills of sale, there are none such here.

Pursuant to this agreement Darner took the notes and placed them in his personal safety deposit box. Shortly thereafter Darner and the representatives of the banks had a conference with the officers of the milling company in Minneapolis, and, as a result of this conference, the banks executed bills of sale a few days later reconveying the property to the milling company and the notes were returned to them. The banks never had possession of any of the property and never interfered with or assumed control over it in any way. Without it the mill could not operate. The milling company remained in possession of it, and ground the grain and made sales of the flour in the usual course of business until the milling company itself went into the hands of a receiver about a month later. The receiver took over all the property then remaining.

We cannot concur in the contention of the elevator company that the transaction above stated released the sureties on the notes. Both the banks and Darner were in doubt whether Darner had authority to make such transfers, and were also in doubt whether they would be valid even if he had authority to make them. For this reason the sale to the banks was made on the express condition that it should not become binding nor affect the liability on the notes if any proceeding could be taken thereafter to apply the property to other purposes, nor until the property was sold and its proceeds received in payment of the notes. And the sale was to be rescinded unless Darner had the right to make it as a matter of law. This provisional agreement to turn the property over to the banks was never carried out nor completed, but on the contrary, as already stated, was wholly rescinded and abandoned.

The H. Poehler Company and the E. L. Welch Company had both become insolvent. All the parties knew that the milling company was also on the verge of insolvency and must have known that it

would be financially unable to continue in business if this property was taken from it. In this situation the doubt as to the validity of the transfers was sufficiently well founded to justify the banks in consenting to rescind them and retain their notes.

In the view we take of the transaction, the authorities cited by the elevator company to the effect that where the holder receives payment of a promissory note, or obtains security from the primary debtor which he thereafter voluntarily surrenders, it releases the sureties, are not in point, for the reason that the claim of the banks to the property never ripened into a legal right to appropriate it as payment or hold it as security.

We attach no importance to the fact that Exhibit B was executed by the banks on one side and by Darner personally, instead of in the name of the milling company, on the other; nor to the fact that Darner was to hold the notes pending the consummation of the deal. He recognized that his action, taken hurriedly without the knowledge of any of the officers of the milling company, was likely to be repudiated as unauthorized, or denounced and set aside as improper and invalid; and, for his own protection, sought to arrange matters so that he could place the parties in statu quo in case anything of that nature happened.

Neither do we attach any importance to the fact, asserted by the banks and denied by the elevator company, that the latter company was informed of the execution of Exhibit B and consented to the abandonment and rescission of the provisional arrangement made by the banks and Darner. The elevator company was not a party to that transaction. It was not carried far enough to release that company from liability on its guaranties, and its rights and obligations remain unaffected by what was done.

As we reach the conclusion that the undisputed facts show that the banks were entitled to recover as a matter of law, the other questions raised are immaterial. In each case the order appealed from is affirmed.