In re BATTANI et al.

ECKHOUT v. GUARDIAN NAT. BANK OF COMMERCE OF DETROIT et al.

Nos. 15,070, 13,762, 9,863, 14,629, 14,056.

District Court, E. D. Michigan, S. D.
Feb. 20, 1934.

McLeod, Fixel, Abbott & Fixel, Frederick B. Darden, and William W. Brashear, all of Detroit, Mich., for petitioners.

Frank E. Wood and Harry Kasfir, both of Cincinnati, Ohio, and William C. Allee, of Detroit, Mich., for B. C. Schram, receiver of Guardian Nat. Bank of Commerce.

KNIGHT, District Judge.

The Union Guardian Trust Company, as receiver of Andrew Battani and Julius Battani, doing business as Battani Brothers, bankrupt, on February 11, 1933, filed a petition with the referee in bankruptcy for an order compelling the Guardian National Bank of Commerce, Detroit, to surrender the moneys in the bankrupts' estate deposited with the Guardian National Bank of Commerce, Detroit. Such petition also asked the consolidation of all proceedings commenced by various receivers and trustees for the recovery of moneys similarly deposited in various banks. An order was thereafter made consolidating all the proceedings in the cases mentioned. The various proceedings are of a like nature and relate to the same questions. Subsequent to the bringing of the action, Schram, as conservator, was joined as a defendant. He was appointed receiver subsequent to the taking of the proofs herein but prior to final submission. On April 12, 1933, issue was joined upon the petition by the service of an answer denying the material allegations of such petition. On February 27, 1933, an order was made by the District Court of the Eastern District of Michigan canceling the designation of the Guardian National Bank of Commerce of Detroit as a depository for bankruptcy funds and directing the last-mentioned bank to surrender all such funds held by it to the Union Guardian Trust Company. On May 18, 1933, the referee made an order requiring the respondents immediately to surrender and pay to Union Guardian Trust Company $335.16 on account of the bankruptcy funds deposited with it in the case of Battani and one, bankrupts. At the time of the filing of the petition, such deposit amounted to $558.-50. This amount was later reduced to $335.-

16 by the payment of dividends by the receiver. Such dividends were accepted without waiver of petitioners' right to recover the balance of the deposit. The referee further ordered that on failure of the respondent receiver to pay the aforesaid balance within ten days from the date of the service of such order the United States marshal be authorized to seize assets of said Guardian National Bank of Commerce of Detroit in sufficient amount to pay to the Union Guardian Trust Company the said sum of $335.16.

Certain findings of fact and conclusions of law made by the referee are the basis for such order. The questions for review broadly are: (1) Whether the referee was disqualified to act in this proceeding by reason of an interest in the outcome thereof? (2) Whether funds deposited by a receiver or trustee in bankruptcy in a depository designated pursuant to the Bankruptcy Act are in custodia legis, in effect held in trust, and are to be paid in full by respondent receiver? (3) Whether the bond of the depository was valid, and, if not, did these deposits by operation of law become deposits in custodia legis?

■ 1. Was the referee disqualified to act because he was interested in an increase in his fees by reason of an increase in the amount payable from the depository. Upon reason and authority, the basis for this contention is without foundation. Such a reason for disqualification would to a large extent prevent referees functioning in office. In every proceeding involving accumulations to an estate they would be disqualified. The statute prohibiting referees from acting in cases in which they are directly or indirectly interested (section 39 of the Bankruptcy Act [11 USCA § 67]) was not intended to apply to cases like the instant one. The rule is well stated in Black on Bankruptcy, § 39: "The statutory restriction as to referees acting in cases in which they are interested does not apply to the interest of a referee by way of commission on sums paid to creditors as dividends. This is a necessary interpretation of the law." Other pertinent authorities are Remington on Bankruptcy, § 595 (3d Ed.); In re Abbey Press (C. C. A.) 134 F. 51; Bray v. Cobb (D. C.) 91 F. 102; Anchor Grain Co. v. Smith (C. C. A.) 297 F. 204; In re Gardner (D. C.) 103 F. 922; Meyers v. Shields (C. C.) 61 F. 713, 726; and Tumey v. State of Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243, cited by respondents, are not comparable cases. In each case a direct financial benefit would have resulted to the official from his act. Tumey v. State of Ohio also is a criminal case. Here referees' fees may or may not be increased. There are other points distinguishing the cases mentioned. I find that the referee was not disqualified to act.

■ 2. Are the funds deposited by the receivers or trustees in bankruptcy in the several cases in a depository designated pursuant to the Bankruptcy Act held in custodia legis and as such entitled to preference in payment?

It is my opinion that the deposits of the receivers and trustees in these bankruptcy estates are general deposits and are not held in custodia legis.

■ There is no question that a receiver or trustee in bankruptcy is an officer of the court, that a bankrupt's title to property passes to the receiver or trustee as of the date of the filing of the petition, and that the receiver or trustee is vested with all the rights "of a creditor holding a lien by legal and equitable proceedings."

■ Respondent bank was designated a depository pursuant to section 61 of the Bankruptcy Act (11 USCA § 101), and the deposits made in the bankrupt's estate were subject to withdrawal only on checks countersigned by the Judge or the Referee. General Order 29 (11 USCA § 53). Rule 18 of the Eastern District of Michigan also specifies certain particulars to be observed by the depository with reference to keeping of accounts, reports, and withdrawals. It is undisputed that the deposits in question were kept in commercial checking accounts upon which interest was paid the estates under agreement with the court. The account was handled as were all other general accounts of the bank, save the checks were required to be countersigned as heretofore stated, and periodical reports to the court required. John Bridge, Receiver, v. First National Bank-Detroit (D. C.) 5 F. Supp. 442, involved the question as to whether funds deposited by an equity receiver constituted general or special deposits. It seems to me the reasons therein given and the authorities cited are applicable here, and that deposits made by the receivers or trustees in bankruptcy herein are general and not special deposits. It is uniformly the holding of the courts that to constitute a special deposit an express agreement must be shown, and such agreement must clearly be implied from the conditions surrounding the deposit. No express agreement is shown nor does the evidence sustain the claim that there was an implied agreement that this would be a special deposit. Proof of a claim as preferred must be

clear and convincing. The idea of a special deposit is one held for a particular purpose in identical or equivalent form as when deposited, subject to return at any time and not commingled by the depository with the other funds. Neither the fact that the deposit was made by one as receiver or trustee, nor the fact that the depository knew the fiduciary character of the depositor is sufficient to impress the deposit as a trust fund. In Gardner v. Chicago Title & Trust Co., 261 U. S. 453, 43 S. Ct. 424, 67 L. Ed. 741, 29 A. L. R. 622, Justice Holmes, delivering the opinion, said: "We assume that when money is deposited in a designated bank under section 61 of the Bankruptcy Law, * * * it is deposited as other money is, and becomes the property of the bank, leaving the bank a debtor for the amount." While this statement may be considered dictum, nevertheless it is entitled to great weight and is in harmony with a great majority of the decisions on the point involved here. In re Bologh (D. C.) 185 F. 825; Minard et al. v. Watts (C. C.) 186 F. 245; In re Potell (D. C.) 53 F. (2d) 877. In Florida Bank & Trust Co. v. Union Indemnity Co. (C. C. A.) 55 F. (2d) 640, 641, 83 A. L. R. 1102, referring to deposits made by receivers and trustees in bankruptcy, the court said: "The deposits now in question created debts owing by the depository bank to the representatives of the several bankrupt estates. * * * " National Bank of the Republic v. Millard, 10 Wall. (77 U. S.) 152, 19 L. Ed. 897; Keyes v. Paducah & I. R. Co. (C. C. A.) 61 F. (2d) 611, 86 A. L. R. 203; Northern Sugar Corp. v. Thompson (C. C. A.) 13 F. (2d) 829; American Surety Co. v. Akron Savings Bank, 212 U. S. 557, 29 S. Ct. 686, 53 L. Ed. 651; Michie on Banks & Banking, vol. 5, § 328, c. 9.

The court's attention is called to the recent decision In the Matter of The Standard Company of Raleigh, Inc., In Bankruptcy No. 2182, decided by District Judge Meekins, United States District Judge for the Eastern District of North Carolina, January 22, 1934.[1] The record in that case indicates facts comparable with those at bar as regards the type of deposits. With the conclusion that the funds there were held in custodia legis, this court cannot agree.

 The respondent bank closed February 11, 1933, pursuant to a bank holiday declared by the Governor of the state of Michigan. It continued closed upon renewal of such holiday until a national banking holiday was proclaimed by the President on March 5, 1933. Respondent conservator was appointed on March 11, 1933, and continued to act as such until May 11, 1933, at which time respondent bank was declared insolvent and the conservator appointed a receiver. On February 27, 1933, an order was made by the District Court of the United States for the Eastern District of Michigan directing the Guardian National Bank of Commerce, as depository of bankruptcy funds for said District Court, to deliver over all bankruptcy funds in its possession. The referee has found that the respondent bank was solvent on February 11, 1933, when its doors were closed. This finding cannot be sustained, nor is any order against the receiver enforceable. The determination of the Comptroller of Currency on the appointment of the receiver on May 11, 1933, that the bank was insolvent, cannot be attacked in this proceeding. Section 192, tit. 12, USCA; Liberty Nat. Bank of S. C. v. McIntosh (C. C. A.) 16 F. (2d) 906; United States Nat. Bank of La Grande v. Pole (D. C.) 2 F. Supp. 153; Crawford v. Gamble (C. C. A.) 57 F. (2d) 15. The rights of the parties are fixed as of the time of the closing of the bank rather than as of the time of the appointment of the receiver. Steele, County Treasurer, v. Randall, Receiver (C. C. A.) 19 F. (2d) 40. The receiver is simply the representative of the Comptroller, and the assets of the bank are not in his possession, but that of the Comptroller. Hulse v. Argetsinger (C. C. A.) 18 F. (2d) 944; Lehman, Sheriff, v. Spurway (C. C. A.) 58 F. (2d) 227. The order of the District Court could not change the character of the deposit when made. The District Court had the right to change the designated depository. It had the right to order and direct the Comptroller to pay over the estates' deposits ratably with other depositors. Section 194, 12 USCA. However, the court did not have the right to make an order directing the payment forthwith of any deposits to the credit of any of these bankrupt estates. The orderly and proper administration of the banking laws as regards insolvent banks requires that debts should be paid on a ratable basis and when and as the funds of the bank justify distribution. The statute requires that the distribution be so made that each creditor and depositor receive the share to which he is legally entitled. Necessarily a determination in respect to distribution must be made by the Comptroller of the Treasury. Such determination, however, is subject to the order

---

[1] No opinion filed.

380

of the proper court in case of untoward delay or proposed illegal distribution. So, with regard to any ratable proportion to which these bankruptcy estates are entitled, the distribution should be made by the Comptroller as hereinbefore indicated. The finding that a summary order issue directing the payment of all deposits made in these several estates cannot be sustained.

3. Was the depository bond valid, and, if not, what was the effect of the failure to give the required bond? Section 61 of the Bankruptcy Act (11 USCA § 101) requires that a bond be given by a depository for bankrupt's estates. The order designating the respondent bank a depository required it to furnish a bond in the amount of $1,250,-000, with sufficient surety. The proposed depository did submit a bond with the Guardian Detroit Union Group, Inc., as surety. This bond was given and approved by the District Judge prior to the making of the deposits in question. The Guardian Detroit Union Group, Inc., was a holding company owning substantially all of the stock of respondent depository, together with the stock of other banks. This corporation was organized under the Domestic Corporation Law of the state of Michigan, known as Act No. 84 of the Public Acts of Michigan of 1921. The Insurance Code of the state of Michigan, Act No. 256, Public Acts of 1917, as amended, provides for the organization of corporations "to guarantee the fidelity of persons in positions of trust, private or public, and to act as surety on official bonds," Compiled Laws of 1929, § 12389, c. 1, pt. 3, subd. 1, § 2, and also provides that no corporate body shall be incorporated for the purpose of transacting any form of insurance or surety bonding business, without complying with the provisions of the insurance law, Compiled Laws of 1929, § 12287, c. 1, pt. 2, § 1. It is not claimed that the holding company had authority to act as a surety under the provisions of the Insurance Code. It is not claimed that it is authorized under any law to engage in the business of acting as a surety. It is claimed that such authority is implied in so far as it relates to this suretyship in question; that acting as such surety for its own subsidiary was legal, because it was done as an incident to and in furtherance of its own business. It is also claimed that under the provisions of Act No. 327, § 10, par. *i*, Public Acts 1931 of Michigan, the holding corporation was authorized to act as such surety.

Questions relative to the effect of the failure to give a depository bond have been frequently decided by the courts. Various states of facts are shown. Variety is illustrated in these cases: In Hancock County et al. v. Hancock National Bank of Sparta et al. (C. C. A.) 67 F.(2d) 421, in which no bond was given, and in which it was held that, since the officer was not required to make the deposit in the particular depository, the bank acquired title and was not a trustee ex maleficio; in the case of In re Potell (D. C.) 53 F.(2d) 877, in which deposits made in an undesignated depository were held to be trust deposits; in Re Weiss (D. C.) 2 F. Supp. 767, 17 A. B. R. (N. S.) 647, in which no bond was given by the depository and the court held the funds on deposit in custodia legis (in that case the officer of the bank represented that the depository bond had been given); in Board of Commissioners of Crawford County v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; and in numerous other cases in which it has been held that where deposits were prohibited by law to be made, when made they became funds in trust for the depository. In the instant case the receivers and trustees were required by law to deposit all bankrupt estate funds in a designated depository. Section 47a (3) of the Bankruptcy Act (11 USCA § 75 (a) (3). While it does not appear that there were depositories other than the respondent bank, it seems to me the effect is the same as though respondent bank were the sole depository and that the deposits in these bankrupt estates became trust funds by operation of law in case the depository bond was invalid.

It is my opinion that the bond in question was a valid bond. The authority to act as surety is not within the specific charter powers of the holding corporation. Its corporate powers are such only as are conferred by statute. Pennsylvania R. Co. v. St. Louis, A. & T. H. R. R. Co., 118 U. S. 290, 6 S. Ct. 1094, 30 L. Ed. 83. There is no express statute giving the holding company the authority to act as a surety unless it is found in Act No. 327, § 10, par. *i*, Public Acts 1931 of Michigan. Nevertheless a corporation has power to do certain acts which are incidental to the general authority of the corporation and which are done in furtherance of such general business. The question regarding the rights of corporations in this respect have been the subject of adjudication many times by the courts. It is apparent that the facts must be much diversified. However, there are numerous cases in which the courts have held that the corporation is authorized to act as a surety or guarantor although the statutes under which organized did not so specifically authorize. In Timm v. Grand Rapids Brewing

Co., 160 Mich. 371, 125 N. W. 357, 27 L. R. A. (N. S.) 186; Munoz v. Brassel (Tex. Civ. App.) 108 S. W. 417; McBroom v. Cheboygan Brewing & Malting Co., 162 Mich. 323, 127 N. W. 361. In numerous cases it has been held that a corporation might guarantee an indebtedness of its subsidiary. Lumbermen's Trust Co. v. Title Ins. & Investment Co. of Tacoma (C. C. A.) 248 F. 212; In re New York Car Wheel Works (D. C.) 141 F. 430; General Investment Co. v. Bethlehem Steel Corp. (D. C.) 248 F. 303. The rule for guidance clearly is stated in Green Bay, etc., R. Co. v. Union Steam-Boat Co., 107 U. S. 100, 2 S. Ct. 221, 223, 27 L. Ed. 413, in which the court said: "But whatever, under the charter and other general laws, reasonably construed, may fairly be regarded as incidental to the objects for which the corporation is created, is not to be taken as prohibited." Henderson Tire & Rubber Co. v. Gregory (C. C. A.) 16 F.(2d) 589, 49 A. L. R. 1503; Hummel v. Warren Steel Casting Co. (C. C. A.) 5 F.(2d) 451; In re John B. Rose Co. (C. C. A.) 275 F. 416; the opinion of the Attorney General of the state of Michigan under date of January 27, 1931, in which he held that "a holding company organized to own the stock of other corporations, including stock of banks and trust companies, * * * may become a surety on bonds securing the deposits of the public funds in the subsidiaries." Among the authorities cited in such opinion is State Bank of Fairfax v. Pacific Elevator Co., 159 Minn. 94, 198 N. W. 304, 305, in which an action was brought against a corporation practically owning through interlocking directorates and stock holdings the company executing the notes in question. The guarantor was held liable. The court there said: "While a corporation cannot become a surety on obligations in which it has no interest, it may guarantee the obligations of its subsidiary companies."

The Guardian Detroit Union Group, Inc., was interested in the deposits made in bankruptcy estates in the Guardian National Bank of Commerce of Detroit and the analogy between this condition and that of parties in these and other cases in this respect seems clear. Increased deposits in the subsidiary bank were beneficial to the holding company. The subsidiaries' business in its entirety was carried on for the benefit of the other company. See, also, 7 R. C. L. 603, and cases cited. Act No. 327, Public Acts of 1931, which is an amendment to the Corporation Law under which the Guardian Detroit Union Group, Inc., was incorporated, was enacted to extend the powers of corporations such as this holding company. It provides that such a company may guarantee "evidence of indebtedness created by, any other corporation or corporations." Section 10, subd. *i.* Having in mind the statutes hereinbefore mentioned which provide for the incorporation of surety companies, it seems to me that the act of 1931 was directed particularly to holding companies. The exceptions in the act, including the authority to become a surety "upon any bond or other undertaking securing the deposit of public moneys" (section 10, subd. *i*), supports the view that the act intended that a company such as the Detroit Union Group, Inc., should have power to guarantee other bonds or undertakings. The funds in question were not public moneys.

The views hereinbefore expressed obviate the necessity of the discussion of any other questions raised upon this proceeding to review the findings of the referee.

Concluding, I find: (1) That the referee herein was not disqualified to act in these proceedings; (2) that the deposits with referees and trustees in bankruptcy herein in the Union Guardian Trust Company as made are not in custodia legis and are not entitled to preference in payment over other general depositors in the Guardian National Bank of Commerce of Detroit; (3) that the depository bond herein given by the Guardian Detroit Union Group, Inc., was a valid depository bond.