STROMBERG-CARLSON TELEPHONE MANUFACTURING
COMPANY v. GEORGE C. BECKWITH COMPANY.[1]

January 11, 1935.

No. 30,213.

*Cobb, Hoke, Benson, Krause & Faegre* and *Nathan A. Cobb,* for
appellant.

*O'Brien & Quinlivan,* for respondent.

HOLT, JUSTICE.

Suit on a guaranty. Findings in favor of plaintiff, and appeal
by defendant from the order denying a new trial.

There is no dispute as to the facts. Plaintiff and defendant were
mercantile corporations. Des Moines Music Company, Inc. was
also a mercantile corporation, doing business at Des Moines, Iowa.
It ordered certain merchandise of plaintiff, which order plaintiff
declined to accept or fill unless defendant would execute the guar-
anty here in suit. Defendant by its president, George C. Beck-
with, executed and delivered the following instrument to plaintiff:

"Des Moines, Iowa, 11/4/30.

"For the consideration of enabling Des Moines Music Co., Inc.
(hereinafter called the purchaser), of Des Moines, Iowa, to buy on

[1]Reported in 258 N. W. 314.

credit from Stromberg-Carlson Telephone Manufacturing Company, a corporation (hereinafter called the vendor), of Rochester, N. Y., the undersigned—waiving notice of the acceptance hereof—does hereby guarantee payment, at the expiration of the time of credit given, for all goods which said vendor may hereafter sell, upon credit, to the said purchaser, until written notice of the with-drawal of this guaranty, signed by the undersigned is delivered to said vendor. Provided that the liability of the undersigned shall at no time exceed Five Thousand Dollars ($5,000.00). Provided also that the maturity of the debt or debts hereby guaranteed may be extended at the option of the vendor and the liability of the undersigned shall not be affected by such extension. Provided also that the debt or debts hereby guaranteed may be evidenced by note or otherwise, and the undersigned hereby guarantees the prompt payment of both principal and interest of any and all such notes and any and all renewals or extensions thereof, or of any part thereof.

"Geo. C. Beckwith Co. (Seal)
"By: Geo. C. Beckwith."

Relying on this guaranty, plaintiff sold and delivered to Des Moines Music Company, Inc. merchandise of the value of $753.48, of which $694.40 is due and unpaid. Beckwith, who executed the guaranty, was the president of the guarantor and owned practically all of its shares of stock when the guaranty was executed. Beckwith also owned the largest part of the shares of stock of the Des Moines Music Company, Inc. Only two other persons owned stock therein, and one of these had only one share. Defendant, prior to November, 1930, had executed guaranties and lent financial assistance to Des Moines Music Company, Inc. and held a large number of its contracts valued at approximately $95,000 as collateral security.

There are four assignments of error, three of which relate to rulings on the reception of evidence establishing the amount due and unpaid upon the guaranteed account. The evidence so ruled upon came in by depositions and exhibits, a loose leaf ledger page

among them. The exhibits are not returned to this court, and from this statement made by defendant's counsel, when speaking of the balance due from the Des Moines Music Company, Inc., "I think it is immaterial here," we assume that defendant does not rest its defense upon the ground that plaintiff claims more than is rightly due from the Des Moines company, but on the ground that defendant is not legally liable because it was not within the power of defendant to execute the guaranty its president signed and delivered in its behalf. At any rate, the ledger sheet of plaintiff verified by the bookkeeper made a *prima facie* showing of the balance due plaintiff.

Defendant cites First Nat. Bank v. Pacific Elev. Co. 159 Minn. 94, 97, 198 N. W. 304, 305, where it is said:

"It is a well settled general rule that in the absence of express authority therefor a corporation cannot become a surety or guarantor for the benefit of another." There the guarantor corporation owned a large block of stock of the corporation whose obligations were guaranteed, and the court said [159 Minn. 97]: "While a corporation cannot become a surety on obligations in which it has no interest, it may guarantee the obligations of its subsidiary companies, and this doctrine has been extended to permit it to guarantee the obligation of others where the purpose is to promote or protect its own rights or property interests, or to accomplish some legitimate object of financial benefit to it, and not merely to aid the primary obligor."

In the decision Woods Lbr. Co. v. Moore, 183 Cal. 497, 191 P. 905, 907, 11 A. L. R. 549, is cited. There the two corporations had the same manager, who had stock in both corporations. Here Beckwith not only was the president of defendant, but Mr. Kinney, its secretary-treasurer, testified that Beckwith had the sole management, that Kinney owned but one share of stock, that Beckwith was the owner of the other shares of stock except one R. C. Coan, and the inference is that he owned no more stock than Kinney. Kinney also testified that Beckwith, Hohtanz, and himself were the owners of all the shares of stock in Des Moines Music

Company, Inc. at the time the guaranty was given, and were interested in coming to the rescue of that corporation; and that Beckwith held the largest part of its stock. Defendant had financed the Des Moines corporation in many of its transactions and had guaranteed certain of its accounts and had taken and held, as collateral security therefor, contracts of the Des Moines corporation of the face value of as much as $95,000. So, although the Des Moines corporation was not a subsidiary of defendant in the sense that defendant owned part of its corporate stock, it was a subsidiary in fact in that Beckwith owned and held practically all the stock in both corporations. Kinney, Coan, and Hohtanz, were the only other shareholders, Kinney being the owner of but one share, and likely the other two held no more. Beckwith affixed the corporate name and seal to the guaranty. This with Kinney's testimony shows the instrument was authorized. Bennett v. Knowles, 66 Minn. 4, 68 N. W. 111. Beckwith did not testify. Enough has been noted to demonstrate that defendant had interests to protect and promote in securing credit for the Des Moines corporation so that the latter might continue in business with the hope that it could meet the obligations which defendant had incurred in its behalf. Woods Lbr. Co. v. Moore, 183 Cal. 497, 191 P. 905, 11 A. L. R. 549, contains a very full discussion of the legal principles applicable to the facts herein. Speaking of the corporation there involved the court said [183 Cal. 501]:

"It was not authorized to make contracts of guaranty as an independent business. It had no express power to make such contracts. The guaranty in question can be upheld as binding upon it only upon the theory that under the circumstances existing at the time it was within its implied powers."

After enumerating various instances of implied power, with appropriate decisions in support thereof, the court says [183 Cal. 501]:

"The question whether or not a contract of guaranty comes within the reasons above mentioned is one which is to be primarily 'determined by the corporation, or those to whom the manage-

ment of its affairs is intrusted.' * * * The court cannot determine that it is beyond the powers of the corporation unless it clearly appears to be so as a matter of law."

Here, according to Kinney's testimony, Beckwith had the exclusive management of defendant. The Woods Lbr. Co. case says of the guaranty therein [183 Cal. 505]:

"It was signed by the secretary by the direction of R. Goldstein, the president and business manager of the corporation; the man who, apparently, had the power to direct and control, and who did direct and control, its affairs and business. Woods knew this, and relied upon it in accepting the guaranty and furnishing the lumber in reliance upon it. The authority of an officer or agent of a corporation to make contracts in its behalf may be shown by proof of conduct and without resort to the minutes of its board of directors, or even where the minutes do not speak on the subject."

City of Venice v. Short Line B. L. Co. 180 Cal. 447, 181 P. 658, and Fowler Gas Co. v. First Nat. Bank, 180 Cal. 471, 181 P. 663, are cited as well as other decisions. We need not be concerned as to the rights of creditors of defendant. It does not appear that there are any needing protection.

The order is affirmed.